## BARRETT, PRESIDENT OF ADAMS EXPRESS CO., v. CITY OF NEW YORK.

## CITY OF NEW YORK v. BARRETT, PRESIDENT OF ADAMS EXPRESS CO.

APPEAL AND CROSS-APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 83, 84. Argued December 3, 4, 1913.—Decided January 5, 1914.

The practical construction of municipal ordinances by the local authorities prior to the controversy is persuasive, especially where, as in this case, a different construction would render the ordinances unconstitutional.

While the exertion of the police power essential for protection of the community may extend incidentally to operations of interstate commerce, the police power does not justify the imposition of direct burdens on that commerce nor its subjection to unreasonable demands.

A state law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it. *Crutcher* v. *Kentucky*, 141 U. S. 47.

An ordinance requiring an express company to take out local licenses for transacting interstate business is an unconstitutional burden on interstate commerce.

Congress has exercised its authority over interstate express business and so removed that business from any action of the State directly burdening it.

A municipal license fee required for express wagons and drivers cannot be construed as a fee or tax for use of the streets or regulation of street traffic; and *quære* whether the ordinance in this case, if so construed, would not be invalid as discriminating against express companies.

While regulations to insure careful driving over city streets may be proper, they should, when interstate traffic is involved, be entirely reasonable. *Quære* whether a requirement that only citizens of the United States, or those who have declared their intention to become

such, can be licensed is not unnecessarily burdensome in a city such as New York.

Where a license tax is declared unconstitutional as to all classes covered by the action it is not necessary for this court to decide whether it has been superseded as to one of the classes by a later statute; *quære* whether the general automobile statute of New York State repealed and superseded the express license fee ordinance of the City of New York.

The ordinances of the City of New York requiring expressmen to be licensed and providing that only citizens of the United States or those who have declared their intention to become such can be licensed, as applied to interstate commerce, impose a direct burden thereon and, as so applied, are unconstitutional under the commerce clause of the Constitution of the United States.

Where a municipal ordinance is unconstitutional as applied to interstate commerce, the person or corporation whose business is impeded by the enforcement of such ordinance is entitled to an injunction restraining the municipal authorities from enforcing it in respect to its interstate business.

189 Fed. Rep. 268, reversed.

THE facts, which involve the constitutionality under the commerce clause of the Federal Constitution of certain ordinances of the City of New York as applied to the interstate business of express companies, are stated in the opinion.

*Mr. William D. Guthrie* for Adams Express Company:

The ordinance is unconstitutional and void as to the interstate express companies because it requires them to take out a license, pay license fees and give bonds for the privilege of carrying on interstate business. *Crutcher* v. *Kentucky*, 141 U. S. 47, 58.

See also *Brennan* v. *Titusville*, 153 U. S. 289, 302; *Adams Express Co.* v. *Ohio*, 166 U. S. 185, 218; *Fairbank* v. *United States*, 181 U. S. 283, 306; *Stockard* v. *Morgan*, 185 U. S. 27, 33; *Caldwell* v. *North Carolina*, 187 U. S. 622; *Atlantic &c. Tel. Co.* v. *Philadelphia*, 190 U. S. 160, 162; *St. Clair County* v. *Interstate Sand & Transfer Co.*, 192 U. S. 454, 468; *West. Un. Tel. Co.* v. *Kansas*, 216 U. S. 1, 21; *In-*

ternational Textbook Co. v. Pigg, 217 U. S. 91, 108; Buck Stove Co. v. Vickers, 226 U. S. 205, 215; Minnesota Rate Cases, 230 U. S. 352, 401.

The service rendered by the drivers and wagons of the Adams Express Company in collecting and delivering packages in the City of New York is an inseparable part of interstate commerce. The local transportation of interstate packages is interstate commerce, and so within the exclusive jurisdiction of the Federal Government. Louisiana R. R. Comm. v. Tex. & Pac. Ry. Co., 229 U. S. 336, 341; St. L. & San Francisco Ry. v. Seale, 229 U. S. 156, 161; Texas & N. O. R. R. Co. v. Sabine Tram Co., 227 U. S. 111; United States v. Union Stock Yard, 226 U. S. 286; Ohio R. R. Comm. v. Worthington, 225 U. S. 101; So. Pac. Terminal Co. v. Int. Com. Comm., 219 U. S. 498, 526; Galveston, H. &c. Ry. Co. v. Texas, 210 U. S. 217; Heyman v. Southern Railway Co., 203 U. S. 270, 274. See also Jewel Tea Co. v. Lee's Summit, 189 Fed. Rep. 280, S. C., 198 Fed. Rep. 532.

The interstate commerce clause of the Constitution guarantees the right to ship merchandise from one State into another, and covers and protects the shipment from the time it commences its transit by whatever means, local or interstate, until the termination of the shipment by delivery at the place of consignment. The Daniel Ball, 10 Wall. 557, 565; Vance v. Vandercook Co., 170 U. S. 438, 451; Am. Exp. Co. v. Iowa, 196 U. S. 133, 142; Adams Exp. Co. v. Iowa, 196 U. S. 147; McNeill v. Southern Ry. Co., 202 U. S. 543, 559; Adams Exp. Co. v. Kentucky, 206 U. S. 129; Osborne v. Mobile, 16 Wall. 479; Leloup v. Port of Mobile, 127 U. S. 640, 647; and see Crutcher v. Kentucky, 141 U. S. 47.

The Crutcher Case has received the approval of this court in West. Un. Tel. Co. v. Kansas, 216 U. S. 1, 19; International Textbook Co. v. Pigg, 217 U. S. 91, 108; Buck Stove Co. v. Vickers, 226 U. S. 205, 215.

*People ex rel. Pennsylvania R. R. Co.* v. *Knight,* 171 N. Y. 354; aff'd 192 U. S. 21, distinguished.

The ordinance shows on its face that its intent and purpose were to regulate business and nothing else, and that it could not have been intended as a regulation of the use of the streets of the City of New York. *Detroit* v. *Little,* 163 Michigan, 444, 448.

Until a few years ago, not a single wagon or driver of the company was licensed, and never until then was any demand or intimation made by any city official that the company must procure licenses for them. This long continued administrative or executive construction of such an ordinance cannot be ignored. *Easton* v. *Pickersgill,* 55 N. Y. 310, 315; *Matter of Tiffany,* 179 N. Y. 455, 459; *New York* v. *City Ry. Co.,* 193 N. Y. 543; *Grimmer* v. *Tenement House Dept.,* 205 N. Y. 549; *Werner* v. *Prendergast,* 206 N. Y. 405, 411; *Fairbank* v. *United States,* 181 U. S. 283, 307; *Studebaker* v. *Perry,* 184 U. S. 258, 268; *United States* v. *Sweet,* 189 U. S. 471, 473; *McMichael* v. *Murphy,* 197 U. S. 304, 312; *Komada* v. *United States,* 215 U. S. 392, 396.

The Charter of the City by § 57 provides for an annual compilation of the ordinances by the board of aldermen. The reënactment, without change, of a statute which had previously received long continued executive construction, is an adoption of such construction. *United States* v. *Hermanos,* 209 U. S. 337; *Copper Mining Co.* v. *Arizona Board,* 206 U. S. 474, 479; *United States* v. *Falk,* 204 U. S. 143, 152; *New Haven R. R.* v. *Interstate Com. Comm.,* 200 U. S. 361, 401. The same principle applies to the adoption by a municipal legislature of the executive construction of an ordinance by repeatedly reënacting it substantially in the form in which it was construed. *Outwater* v. *Green,* 56 N. Y. 456, 475; *Pouch* v. *Prudential Ins. Co.,* 204 N. Y. 281, 288.

The court cannot remodel or reconstruct the ordinance

so as to make it read as if its operation were expressly limited.to the wagons and drivers of the interstate carriers who are engaged in local business, and thus compel such carriers at prohibitive expense and inconvenience to separate the local from the interstate business. *Williams* v. *Talladega,* 226 U. S. 404, 419; *Ill. Cent. R. R.* v. *McKendree,* 203 U. S. 514, 529; *Allen* v. *Pullman Co.,* 191 U. S. 171, 179.

Congress has legislated upon the subject covered by the ordinance and its legislation is exclusive and supersedes all state regulations. *Nor. Pac. Ry.* v. *Washington,* 222 U. S. 370; *Southern Ry. Co.* v. *Reid,* 222 U. S. 424; *Southern Ry. Co.* v. *Reid & Beam,* 222 U. S. 444; *N. Y. Cent. R. R.* v. *Hudson County,* 227 U. S. 248; *St. Louis, Iron Mt. & S. Ry.* v. *Edwards,* 227 U. S. 265; *Louisville & N. R. Co.* v. *Hughes,* 201 Fed. Rep. 727.

The ordinance in question is not severable. *Trade-Mark Cases,* 100 U. S. 82, 99; *Allen* v. *Louisiana,* 103 U. S. 80, 83; *Poindexter* v. *Greenhow,* 114 U. S. 270, 304; *California* v. *Pacific R. R. Co.,* 127 U. S. 1, 29; *Baldwin* v. *Franks,* 120 U. S. 678, 685; *Pollock* v. *Farmers' L. & T. Co.,* 158 U. S. 601, 635; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 565; *United States* v. *Ju Toy,* 198 U. S. 253, 262; *Ill. Cent. R. R. Co.* v. *McKendree,* 203 U. S. 514, 529; *Hatch* v. *Reardon,* 204 U. S. 152, 160; *Employers' Liability Cases,* 207 U. S. 463, 501; *El Paso & N. E. Ry.* v. *Gutierrez,* 215 U. S. 87, 97; *International Textbook Co.* v. *Pigg,* 217 U. S. 91, 113; *Oklahoma* v. *Wells, Fargo & Co.,* 223 U. S. 298, 302; *Butts* v. *Merchants Transpn. Co.,* 230 U. S. 126, 133.

If the ordinance in question had been expressly drawn as a regulation of the use of the streets of the City of New York under § 50 of the Greater New York Charter, it would nevertheless be invalid.

The board of aldermen could not exact a license fee for the use of the streets by any class of the public having

the right to use the same. *New York* v. *N. Y. City R. Co.*, 138 App. Div. 131, 136; aff'd 203 N. Y. 593; *Chicago* v. *Collins*, 175 Illinois, 445, 454; *Harder's Storage Co.* v. *Chicago*, 235 Illinois, 58, 84.

Aliens are entitled to the protection of equal laws. *Southern Ry. Co.* v. *Greene*, 216 U. S. 400, 417; *Gulf, Col. &c. Ry.* v. *Ellis*, 165 U. S. 150, 165.

Undoubtedly, under the police power and in the absence of action and regulation by Congress, the several States have ample power to enact reasonable police regulations and legal sanctions which indirectly affect interstate commerce. See *Smith* v. *Alabama*, 124 U. S. 465; *Nashville &c. R. Co.* v. *Alabama*, 128 U. S. 96; *West. Un. Tel. Co.* v. *James*, 162 U. S. 650; *Chicago &c. R. Co.* v. *Solan*, 169 U. S. 133; *Penn. R. R. Co.* v. *Hughes,* 191 U. S. 477; *Martin* v. *Pittsburg &c. R. R. Co.*, 203 U. S. 284; *Atlantic Coast Line* v. *Mazursky*, 216 U. S. 122; *West. Un. Tel. Co.* v. *Milling Co.*, 218 U. S. 406; *West. Un. Tel. Co.* v. *Crovo*, 220 U. S. 364.

In each of these cases, however, the provision in question related either to a subject not yet covered by any legislation of Congress, or created a sanction to secure the performance of the legal duties of common carriers. Many of these regulations belonged to that large class which are superseded as soon as Congress asserts its right to exercise exclusive power and to introduce uniform regulations. *Adams Exp. Co.* v. *Croninger*, 226 U. S. 491, 500; *Kansas City Southern Ry.* v. *Carl*, 227 U. S. 639, 649.

The right to relief in equity is plain. See *Osborn* v. *Bank*, 9 Wh. 738, 838; *Ex parte Young*, 209 U. S. 123, 161; *Ludwig* v. *West. Un. Tel. Co.*, 216 U. S. 146; *West. Un. Tel. Co.* v. *Andrews*, 216 U. S. 165; *United States Exp. Co.* v. *Hemmingway*, 39 Fed. Rep. 60; *Postal Tel. Co.* v. *Mobile*, 179 Fed. Rep. 955, 960; *Simpson-Crawford Co.* v. *Atlantic Highlands*, 158 Fed. Rep. 372; *Hutchinson* v. *Beckham*, 118 Fed. Rep. 399; *Jewel Tea Co.* v. *Lee's Summit*, 198

Fed. Rep. 532; *Southern Exp. Co.* v. *Ensley*, 116 Fed. Rep. 756, 761; *Gas Co.* v. *Kansas City*, 198 Fed. Rep. 500, 510; *Southern Ry. Co.* v. *Asheville*, 69 Fed. Rep. 359, 360, 361.

*Mr. Walker D. Hines* for the United States Express Company in Nos. 85 and 86, argued simultaneously herewith:[1]

There was no basis for separation because the various specific provisions upheld below cannot be regarded as regulations as to the use of the streets.

The various specific provisions upheld below, even if they could be regarded as regulations as to the use of the streets, are not separable from the remainder of the ordinance.

But the license provisions are an unreasonable burden upon interstate commerce even if relating to the use of the streets and capable of separation.

The reasonableness of the regulation is a question for the court and the inquiry is broader under the commerce clause than under the Fourteenth Amendment.

The relation to any local police necessity is so remote and fanciful, and the interference with interstate commerce so direct and burdensome, that the regulations are unreasonable as to interstate commerce.

The regulations apply to a very small part of the vehicles using the streets, and this, under the facts of this case, establishes unreasonableness as to interstate commerce.

The Mayor's power to revoke licenses creates under the peculiar circumstances here an unreasonable burden upon interstate commerce.

The requirement of a bond for prompt delivery of interstate shipments is an unconstitutional interference with interstate commerce.

[1] See p. 35, *post*.

There is no basis for the view that the duties of interstate express companies to their patrons can be regulated by this ordinance as an "aid to interstate commerce."

In support of these contentions, see *Adams Exp. Co.* v. *Croninger,* 226 U. S. 491; *Atlantic Coast Line* v. *Mazursky,* 216 U. S. 122; *Chicago, R. I. & Pac. Ry.* v. *Hardwick Elevator Co.,* 226 U. S. 426; *Cleveland &c. Ry. Co.* v. *Illinois,* 177 U. S. 514; *Crutcher* v. *Kentucky,* 141 U. S. 47; *Gladson* v. *Minnesota,* 166 U. S. 427; *Hampton* v. *St. L., Iron Mt. & So. Ry. Co.,* 227 U. S. 456; *Haskell* v. *Kansas Natural Gas Co.,* 224 U. S. 217; *Kansas City S. Ry. Co.* v. *Carl,* 227 U. S. 639; *Lake Shore Ry. Co.* v. *Ohio,* 173 U. S. 285; *M., K. & T. Ry. Co.* v. *Harriman,* 227 U. S. 657; *Nashville &c. R. R. Co.* v. *Alabama,* 128 U. S. 96; *Powell* v. *Pennsylvania,* 127 U. S. 678; *Reagan* v. *Farmers L. & T. Co.,* 154 U. S. 362; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1; *Smith* v. *Alabama,* 124 U. S. 465; *Southern Ry. Co.* v. *Reid,* 222 U. S. 242; *West. Un. Tel. Co.* v. *James,* 162 U. S. 650; *West. Un. Tel. Co.* v. *Crovo,* 220 U. S. 364; *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19; *Yazoo & Miss. Valley R. R. Co.* v. *Greenwood Grocery Co.,* 227 U. S. 1.

*Mr. Terence Farley,* with whom *Mr. Archibald R. Watson* was on the brief, for the City of New York, in these cases and in Nos. 85 and 86, argued simultaneously herewith: [1]

The ordinances in question were enacted under the authority of the provisions of the Greater New York Charter, and as so enacted have the force of law within the corporate limits of the City of New York. Laws of 1901, c. 466, §§ 43, 44, 50, 51.

The ordinances in question were passed in pursuance of legislative authority, and have the force of law and are as obligatory as if enacted by the legislature itself.

---

[1] See p. 35, *post.*

*Buffalo* v. *New York, L. E. & W. R. R. Co.,* 152 N. Y. 276, 280; *Kittinger* v. *Buffalo Traction Co.,* 160 N. Y. 377, 389.

The ordinances are a valid exercise of the police power of the municipality, which has been delegated to it by the State, and are reasonable and just.

While the power of Congress to regulate interstate commerce is exclusive and the State cannot legislate on that subject, *Covington Bridge Co.* v. *Kentucky,* 154 U. S. 204; *West. Un. Tel. Co.* v. *James,* 162 U. S. 650, whenever the subject of the regulation is of a local nature, and only incidentally affects interstate commerce, it is within the legislative power of the State, in the absence of conflicting national regulation of the same subject. *Robbins* v. *Shelby County Taxing Dist.,* 120 U. S. 489, 492; *West. Un. Tel. Co.* v. *James, supra; New York, N. H. & H. R. R. Co.* v. *New York,* 165 U. S. 628; *Lake Shore & M. S. R. Co.* v. *Ohio,* 173 U. S. 285; *Atl. & Pac. Tel. Co.* v. *Philadelphia,* 190 U. S. 160; *Missouri Pac. R. Co.* v. *Larabee Flour Mill Co.,* 211 U. S. 612: *Houston & Texas R. Co.* v. *Mayes,* 201 U. S. 321; *Atlantic Coast Line* v. *Wharton,* 207 U. S. 328, 334.

In the absence of legislation by Congress, the State may enact reasonable laws, under its police powers and in pursuance of acknowledged state authority, which indirectly affect interstate commerce. *Reid* v. *Colorado,* 187 U. S. 137; *Asbell* v. *Kansas,* 209 U. S. 251; *N. Y., N. H. & H. R. Co.* v. *New York,* 165 U. S. 628; *Smith* v. *Alabama,* 124 U. S. 465; *Nashville, Chat. & St. L. R. Co.* v. *Alabama,* 128 U. S. 96; *Lake Shore & M. S. R. Co.* v. *Ohio,* 173 U. S. 285. See, also, *Hemmington* v. *Georgia,* 163 U. S. 299; *Patapsco Guano Co.* v. *Bd. of Agriculture,* 171 U. S. 345; *Olsen* v. *Smith,* 195 U. S. 332; *New Mexico* v. *McLean,* 203 U. S. 38; *New York* v. *Hesterberg,* 211 U. S. 31; *The Minnesota Rate Cases,* 230 U. S. 352, 402, 410.

The ordinances are not a tax laid upon interstate com-

merce. See §§ 300, 379, c. 7, Code of Ordinances of the City of New York (Cosby's).

The license fees of $5 for each express wagon and of fifty cents for each driver thereof, therefore, are merely the necessary sums reasonably fixed to cover the ordinary and usual expenses of administration, supervision and .inspection; and, as such, are sums collected in aid of the exercise of the police powers and are not an exercise of the taxing power. The distinction between licenses, and fees in connection therewith, exacted in the exercise of the police power, and license taxes, levied under the taxing power, has long been recognized. *West. Un. Tel. Co.* v. *New Hope*, 187 U. S. 419; *Atl. & Pac. Tel. Co.* v. *Philadelphia*, 190 U. S. 160; *Postal Tel. Co.* v. *New Hope*, 192 U. S. 55; *Postal Tel. Co.* v. *Borough of Taylor*, 192 U. S. 64; *Duluth Brew. Co.* v. *Superior*, 123 Fed. Rep. 353, 358; *Barrett* v. *New York*, 183 Fed. Rep. 796.

In this case there is no allegation that the license fees are excessive or unreasonable.

The ordinances are general, and not special, and make no unjust discriminations in violation of the Fourteenth Amendment. *Barrett* v. *New York*, 183 Fed. Rep. 801.

The classification is proper. *Magoun* v. *Ill. Trust Bank*, 170 U. S. 283; *Orient Ins. Co.* v. *Daggs*, 172 U. S. 557; *Railway Co.* v. *Mackay*, 127 U. S. 204, 208; *Railway Co.* v. *Beckwith*, 129 U. S. 26.

MR. JUSTICE HUGHES delivered the opinion of the court.

This suit was brought to restrain the enforcement against the Adams Express Company of a group of ordinances of the Board of Aldermen of the City of New York upon the ground that, as applied to that Company, these ordinances constitute an unconstitutional interference with interstate commerce and deny to it the equal protection of the laws. The ordinances are contained in

Chapter 7 of the Code of Ordinances adopted in the year 1906 as amended (Cosby's Edition, 1911), and the material sections together with portions of the context are set forth in the margin:[1]

The chapter relates to specified businesses in which no one is permitted to engage except under an annual license granted by the Mayor and revocable by him. Among these is the business of "expressmen" (§§ 305, 306).

---

[1] CHAPTER 7.

TITLE I.—BUREAU OF LICENSES.

(§§ 300–304)

\*   \*   \*   \*   \*   \*   \*   \*

TITLE II.—THE GRANTING AND REGULATION OF LICENSES.

*Article I.—Business Requiring a License.*

§ 305. The following businesses must be duly licensed as herein provided, namely, public cartmen, truckmen, hackmen, cabmen, expressmen, drivers, junk dealers, dealers in second-hand articles, hawkers, peddlers, venders, ticket speculators, coal scalpers, common shows, shooting galleries, bowling alleys, billiard tables, dirt carts, exterior hoists and stands within stoop-lines and under the stairs of the elevated railroad stations. (Ord. app. May 22, 1899, § 1.)

§ 306. No person shall engage in or carry on any such business without a license therefor under a penalty of not less than two dollars, nor more than twenty-fiv dollars for each offense, and for the purposes of this ordinance the term person shall include any human being or lawful association of such. (Id., § 2.)

*Article II.—Licenses and License fees.*

§ 307. All licenses shall be granted by authority of the Mayor and issued by the Bureau of Licenses for a term of one year from the date thereof, unless sooner suspended or revoked by the Mayor, and no person shall be licensed except a citizen of the United States or one who has regularly declared intention to become a citizen.

The Mayor shall have power to suspend or revoke any license or permit issued under the provisions of this ordinance. The Mayor shall also have power to impose a fine of not more than five dollars or less than one dollar for any violation of the regulations herein provided, and to suspend the license pending payment of such fine, which, when collected, shall be paid into the sinking fund for the redemption of the city debt. (Id., § 3.)

It is provided that no person is to be licensed "except a citizen of the United States or one who has regularly declared intention to become a citizen" (§ 307). The license fee is "for each express wagon," five dollars, and, "for each driver of any licensed vehicle," fifty cents,

---

§ 308. The annual license fees shall be as below enumerated:

| * | * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|---|

For each express wagon............................ $5.00

| * | * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|---|

For each driver of any licensed vehicle............... .50

(Id., § 4.)

§ 309. Any license, before its expiration or within thirty days thereafter, may be renewed for another term, upon payment of one-half the license fee above designated therefor.

All licenses in force when this ordinance takes effect for any business enumerated above may be renewed under the foregoing provisions regulating renewals of licenses hereunder issued. (Id., § 5.)

*Article III.—Special Regulations and Rates.*
*I. Public Carts and Cartmen.*

| * | * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|---|

*II. Drivers of Licensed Vehicles.*

§ 315. Every person driving a licensed hack, or express, shall be licensed as such driver, and every application for such license shall be indorsed, in writing, by two reputable residents of The City of New York testifying to the competence of the applicant. No owner of a licensed hack or express shall employ an unlicensed driver under a penalty of $10 for each and every offense. (Amend. app. June 29, 1909.`

*III. Public Hacks and Hackmen.*

| * | * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|---|

*IV. Public Hack Stands.*

| * | * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|---|

*IVa. Public Porters.*

| * | * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|---|

*V. Expresses and Expressmen.*

§ 330. Every vehicle of whatever construction kept or used for the conveyance of baggage, packages, parcels and other articles within or through The City of New York for pay, shall be deemed a public express, and the owner thereof shall be deemed a public expressman, and the term expressman shall be deemed to include any common carrier of

with provision for renewal at one-half these rates (§ 308). Every person driving a licensed "express" is to be "licensed as such driver, and every application for such license shall be indorsed, in writing, by two reputable

---

baggage, packages, parcels or other articles within or through The City of New York. (Ord. app. May 22, 1899, § 18.)

§ 331. Every public express shall show on each outside thereof the word "Express," or the letters "Exp.," together with the figures of its official number. (Id., § 19.)

§ 332. Every owner of a public express shall give a bond to The City of New York for each and every vehicle licensed in a penal sum of $100, with sufficient surety, approved by the Mayor or Chief of the Bureau of Licenses, conditioned for the safe and prompt delivery of all baggage, packages, parcels and other articles or things entrusted to the owner or driver of any such licensed express. (Id., § 20)

§ 333. The legal rates for regular deliveries, unless otherwise mutually agreed, shall be as follows in the city:

Between points within any borough—

| | |
|---|---|
| Not more than five miles apart, each piece | $0 40 |
| Not more than ten miles apart, each piece | 55 |
| Not more than fifteen miles apart, each piece | 75 |

Between points in different boroughs: One-half the above rates in addition.

Special deliveries at rates to be mutually agreed upon. (Id., § 21.)

[The succeeding provisions of Article III (subdivisions VI–XVI) and Article IV, relate to Junk Dealers, Dealers in Second-Hand Articles, Peddlers, etc., being the remaining businesses described in § 305.]

TITLE 3.—GENERAL REGULATIONS AND COMPLAINTS.

§ 373. All license fees received by the Bureau of Licenses shall be regularly paid over to the City Treasury, except the license fees received from hackmen, dealers in junk and second-hand articles, and for stands within stoop-lines, which shall be paid into the Sinking Funds for the Redemption of the City Debt. (Ord. app. May 22, 1899, § 56.)

§ 374. The Mayor shall have power to appoint inspectors in the Bureau of Licenses to see that the provisions of this ordinance are fully and properly complied with; and all licensed vehicles and places of business shall be regularly inspected, and the result of such inspection shall be indorsed on the official license therefor, together with the date of inspection and the signature of the inspector, and all inspections shall be regularly reported to the Bureau of Licenses. (Id., § 57.)

residents of The City of New York testifying to the competence of the applicant" (§ 315). Every vehicle "kept or used for the conveyance of baggage, packages, parcels and other articles within or through The City of New

---

§ 375. Every licensee shall have the official license and exhibit the same upon the demand of any person; and shall report within three days to the Bureau of Licenses any change of residence or place of business; and shall at all times perform the public duties of the business licensed when called upon so to do, if not actually unable. (Id., § 58.)

§ 376. All words, letters and numbers hereinbefore prescribed for licensed vehicles shall be shown permanently and conspicuously on each outside thereof in colors contrasting strongly with background, and not less than two inches high, as directed and approved by the Mayor or Chief of the Bureau of Licenses, and shall be kept legible and plainly visible at all times during the term of the license; and shall be obliterated or erased upon change of ownership or expiration of the license; and no person shall have or use any vehicle with words, letters or numbers thereon like those herein prescribed for licensed vehicles without being duly licensed therefor. (Id., § 59.) . . .

§ 378. The Chief of the Bureau of Licenses, or Deputy Chief, shall have power to hear and determine complaints against licensees hereunder and impose a fine of not more than five dollars or less than one dollar for any violation of the regulations herein provided, subject to the approval of the Mayor, who shall have power to suspend the license pending payment of such fine. All such fines, when collected, shall be paid into the Sinking Fund for the Redemption of the City Debt. (Id., § 61.)

### TITLE 4.—VIOLATIONS.

§ 379. Except as hereinbefore otherwise provided, no person shall violate any of the regulations of this ordinance under a penalty of ten dollars for each offense. No such violation shall be continued under a penalty of one dollar for each day so continued. Any person engaging in or carrying on any business herein regulated without a license therefor, or any person violating any of the regulations of this ordinance, shall be deemed guilty of a misdemeanor, and upon conviction thereof by any magistrate, either upon confession of the party or competent testimony, may be fined not more than ten dollars for each offense, and in default of payment of such fine may be committed to prison by such magistrate until the same be paid; but such imprisonment shall not exceed ten days. (Id., § 62, as amended June 29, 1909.)

York for pay" is to be deemed a public express (§ 330). It is to bear a designation accordingly with its official number (§ 331). Its owner is to give a bond to the State for "every vehicle licensed in a penal sum of $100, with sufficient surety, approved by the Mayor or Chief of the Bureau of Licenses, conditioned for the safe and prompt delivery" of all articles (§ 332). Provision is also made for the regular inspection of "all licensed vehicles and places of business" (§ 374), the report of any change of residence to the Bureau of Licenses (*id.*), the exhibition of licenses upon demand (§ 375), and the display of the prescribed letters and numbers (§ 376). Penalties are provided for the violation of these requirements, and any person carrying on any business regulated by the ordinance, without license, is guilty of a misdemeanor (§§ 307, 315, 379).

The Adams Express Company, an unincorporated association organized under the laws of New York, has been engaged in interstate commerce, as a common carrier of packages, since the year 1854. It transacts its business in many States; and in the City of New York it handles daily about 50,000 interstate shipments, employing 341 wagons and 68 automobiles. About one-half of these wagons are stabled in Jersey City. Its shipments from New York City to the south and west are hauled to Jersey City and there loaded on express cars of the Pennsylvania Railroad; those destined to points east are taken to the terminal in New York City of the New York, New Haven and Hartford Railroad; and there is also traffic for points on the New York, Ontario and Western Railroad, and tributary thereto, which is carried to the terminal of that road at Weehawken, New Jersey. Shipments received from out of the State for delivery in New York City are taken by the Company's vehicles to the consignees either directly from these railroad terminals or through intermediate distributing offices. The Company also

does a local business in the City of New York and, in addition, receives packages for transportation between that city and such points within the State of New York as are on the line of the New York, New Haven and Hartford Railroad. The interstate business, however, in the number of packages, comprises ninety-eight per cent. of the total business transacted in New York City, and, it being impracticable to effect a separation, the local and the other intrastate shipments are handled in the same vehicles, and by the same men, that are employed in connection with the interstate transportation. It was not until recently that the City sought to compel the Company, in the transaction of this business, to comply with its license ordinances, although there have been ordinances requiring licenses for both express wagons and their drivers for over fifty years (Kent's ed. (1856); Valentine's ed. (1859), pp. 374, 375; Shepard & Shafer's ed. (1881), §§ 380–386; Laird's ed. (1894), §§ 380–386; Percy & Collins' ed., §§ 497–504). The provisions here involved (except § 315) received their present form in 1899. (Ord. app. May 22, 1899, *ante*, p. 25, *note*.) It is conceded that the Company has never been compelled to obtain a license for the conduct of its interstate express business, and that its wagons and drivers employed therein have never been licensed, except "that for several years last past about 40 licenses for wagons and drivers have been taken out." The evidence shows that in 1908 an arrangement was made, by way of compromise, that the forty licenses should be issued (twenty having been taken out the year before). The Company agreed to this number, without prejudice, asserting that it was larger in proportion to the total number of wagons than the local business warranted and also that the latter was merely incidental to the interstate business and hence not subject to the license requirements. In the fall of 1910, however, at a time when the business of the Company was interrupted

by a strike of its drivers, and it was endeavoring to replace
those who had stopped work, the City through its officers
undertook to enforce the ordinances with respect to all
the wagons and drivers of the Company, threatening
to arrest unlicensed drivers of unlicensed wagons not-
withstanding they might be engaged in interstate trans-
portation and to remove, if necessary, unlicensed wagons
from the streets. This was the occasion of the present
suit.

The Circuit Court held that §§ 305 and 306 were in-
operative so far as they purported to require the com-
plainant to obtain a local license for transacting its in-
terstate business, and further that the requirement of
licenses as to express automobiles, and chauffeurs, had
been superseded by a state statute (Laws of 1910, c. 374).
To this extent the City, and its officers who were code-
fendants, were enjoined. But with respect to the payment
of license fees for express wagons and drivers, and the
other regulations which we have briefly described, the
court held that the enactments were valid and an injunc-
tion was refused. 189 Fed. Rep. 268. Both parties appeal,
the Company insisting that it was entitled to the entire
relief sought, and the City, that no relief whatever should
have been granted.

In restraining the enforcement of §§ 305 and 306, as
stated, we think that the court was right. In the absence
of a controlling state decision construing the group of or-
dinances in question and the statute authorizing the City
to license businesses (Greater New York Charter, § 51),
we are not satisfied that they were designed, despite the
broad definition contained in § 330, to apply to interstate
business. The practical construction which they received
before the present controversy arose is very persuasive
to the contrary (*City of New York* v. *New York City Ry.
Co.*, 193 N. Y. 543, 549; *United States* v. *Hermanos*, 209
U. S. 337, 339). But, if the above-mentioned sections are

to be deemed to require that a license must be obtained as a condition precedent to conducting the interstate business of an express company, we are of the opinion that so construed they would be clearly unconstitutional. It is insisted that, under the authority of the State, the ordinances were adopted in the exercise of the police power. But that does not justify the imposition of a direct burden upon interstate commerce. Undoubtedly, the exertion of the power essential to assure needed protection to the community may extend incidentally to the operations of a carrier in its interstate business, provided it does not subject that business to unreasonable demands and is not opposed to Federal legislation. *Smith* v. *Alabama,* 124 U. S. 465; *Hennington* v. *Georgia,* 163 U. S. 299; *N. Y., N. H. & H. R. R. Co.* v. *New York,* 165 U. S. 628; *Lake Shore & M. S. Ry. Co.* v. *Ohio,* 173 U. S. 285. It must, however, be confined to matters which are appropriately of local concern. It must proceed upon the recognition of the right secured by the Federal Constitution. Local police regulations cannot go so far as to deny the right to engage in interstate commerce, or to treat it as a local privilege and prohibit its exercise in the absence of a local license. *Crutcher* v. *Kentucky,* 141 U. S. 47, 58; *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489, 496; *Leloup* v. *Mobile,* 127 U. S. 640, 645; *Stoutenburgh* v. *Hennick,* 129 U. S. 141, 148; *Rearick* v. *Pennsylvania,* 203 U. S. 507; *International Text Book Co.* v. *Pigg,* 217 U. S. 91, 109; *Oklahoma* v. *Kansas Natural Gas Co.,* 221 U. S. 229, 260; *Buck Stove Co.* v. *Vickers,* 226 U. S. 205, 215; *Crenshaw* v. *Arkansas,* 227 U. S. 389; *Minnesota Rate Cases,* 230 U. S. 352, 401. As was said by this court in *Crutcher* v. *Kentucky,* 141 U. S. p. 58, "a state law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it."

The requirements of §§ 305 and 306, with the schedule

of fees in § 308, cannot be regarded as imposing a fee, or tax, for the use of the streets; if they were such, the question would at once arise as to the validity of the discrimination involved in such an exaction. Nor can they be considered as a regulation in the interest of safety in street traffic. Other ordinances provide for the "rules of the road" to which wagons of express companies, as well as those of other persons, are subject (Code of Ordinances, chap. 12). The sections now under consideration constitute a regulation of the express "business." Article I is entitled "Business Requiring a License"; § 305, containing the enumeration, provides that "the following businesses must be duly licensed" and § 306, that "no person shall engage in or carry on any such business without a license therefor" under a stated penalty (*ante*, p. 24, *note*). The right of public control, in requiring such a license, is asserted by virtue of the character of the employment, but while such a requirement may be proper in the case of local or intrastate business, it cannot be justified as a prerequisite to the conduct of the business that is interstate. Not only is the latter protected from the action of the State, either directly or through its municipalities, in laying direct burdens upon it, but, in the present instance, Congress has exercised its authority and has provided its own scheme of regulation in order to secure the discharge of the public obligations that the business involves. Act of June 29, 1906, c. 3591, 34 Stat. 584; *Adams Express Co.* v. *Croninger*, 226 U. S. 491, 505; *United States* v. *Adams Express Co.*, 229 U. S. 381.

It would seem to follow, necessarily, that the annual license fees prescribed by § 308 (*ante*, p. 25, *note*) cannot be exacted, so far as the interstate business is concerned. They cannot be regarded as coming within the category of inspection fees, which are sustained when fairly commensurate with the cost of local supervision of such matters as are under local control (*Western Union Tel. Co.* v.

*New Hope*, 187 U. S. 419, 425; *Atlantic &c. Tel. Co.* v. *Philadelphia*, 190 U. S. 160, 164). The provisions of § 308 are inseparably connected with those of §§ 305 and 306. The sums fixed "for each express wagon" and "for each driver" measure the amount to be exacted for the granting of the license required for the carrying on of business. And it is difficult to see how the payment can be enforced as to the interstate business if the taking out of the license therefor cannot be compelled.

Similar considerations are controlling with respect to the provision of § 332 for the giving of license bonds. This in terms is related to the requirement of § 305. It is provided that a bond shall be given "for each and every vehicle licensed" and it is to be conditioned "for the safe and prompt delivery of all baggage, packages," etc., entrusted to the owner or driver "of any such licensed express." As applied to the Company's business of interstate transportation, it must fall with the provision regarding the license, and, further, it must be regarded as repugnant to the exclusive control asserted by Congress in occupying the field of regulation with regard to the obligations to be assumed by interstate express carriers. (*Adams Express Co.* v. *Croninger, supra; Southern Ry. Co.* v. *Reid*, 222 U. S. 424; *Same* v. *Reid & Beam, id.*, 444, 447.)

Section 315 provides for separate licenses for drivers. We may assume the propriety of suitable provision to ensure careful driving over the city streets and the existence of ample power to meet this local necessity. It is also clear that regulations for this purpose, when the movement of interstate traffic is involved, should be entirely reasonable and should not arbitrarily restrict the facilities upon which it must depend. If the provision of § 315 could be regarded as severable from the requirement of a license for the conduct of business, we should still have great difficulty in sustaining it as a reasonable regu-

lation with regard to drivers employed in the interstate transportation which has been described. Reading § 315 in connection with § 307, as we understand the City contends it should be read, no driver can be licensed except a citizen of the United States or one who has regularly declared intention to become a citizen, and the assurance of his qualifications does not depend simply upon the applicant's ability to meet appropriate tests so as to satisfy the official judgment but the application must be accompanied by the indorsement in writing of two reputable residents of the city testifying to his competence. When the importance to the entire country of promptness and facility in the conduct of the business of the express companies in New York City, and the obvious convenience of their being able to secure drivers in Jersey City as well as in New York, are considered, the provision would seem to be unnecessarily burdensome. We are not called upon, however, to decide this point. Section 315 relates exclusively to drivers of a "licensed hack or express." There is no such provision as to drivers of wagons generally. While the driver's license is separate, the ordinance refers only to such drivers as are employed in the business for the carrying on of which a license may be required. Whatever might otherwise be the City's power as to the regulation of drivers, this provision cannot be divorced from the license scheme of which it is a part.

Other requirements, such as the marking of the vehicles with their official numbers, the exhibition of licenses upon demand, and the inspection of "licensed vehicles and places of business" have obvious reference to the same license plan.

We conclude that the complainant was entitled to an injunction restraining the enforcement of the ordinances in question against the Company with respect to the conduct of its interstate business and its wagons and drivers

employed in interstate commerce.   In this view it is unnecessary to consider whether the ordinances have been superseded, as to automobiles, by the state statute.

The decree of the Circuit Court is reversed and the case is remanded to the District Court with direction to enter a decree in favor of the complainant in conformity with this opinion.

*It is so ordered.*