AMERICAN TRANSIT CO. v. CITY OF PHILADELPHIA et al.

AMERICAN MOTOR COACH SYSTEM v. SAME.

District Court, E. D. Pennsylvania. April 19, 1927.

Nos. 3995, 3997.

1. Commerce ⬩48—States may not directly subject interstate commerce to unreasonable burdens or demands.

Any action by a state, directly or through its municipalities, exercising such control over interstate commerce as to directly interfere with its operation, must be such as does not impose unreasonable burdens on that commerce, nor subject it to unreasonable demands.

2. Commerce ⬩63—Philadelphia ordinance requiring licensing of motor busses held not invalid, as imposing burden on interstate commerce (Motor Vehicle Law Pa. 1925).

An ordinance of the city of Philadelphia, enacted under authority of Motor Vehicle Law Pa. April 27, 1925 (P. L. 254), requires every motor bus using the streets of the city in carrying passengers for hire to be registered and licensed, paying an annual license fee of $50, and to furnish to the city, authorities certain information identifying the vehicle and its owners and driver. Incidentally the ordinance affects busses doing exclusively interstate business and having terminals in the city and routes through its streets. Held that, as applied to such vehicles, the ordinance was not invalid as imposing a direct and unreasonable burden on interstate commerce, but was a reasonable exercise of the police power for the public good, and reasonably necessary under present conditions of motor traffic.

In Equity. Suits by the American Transit Company and by the American Motor Coach System against the City of Philadelphia and others. On motions for preliminary injunctions. Denied.

Earl G. Harrison, Saul, Ewing Remick & Saul, and Howard M. Long, all of Philadelphia, Pa., for plaintiffs.

Joseph P. Gaffney, Sol., Jas. Francis Ryan and John B. Gest, Asst. Solicitors, all of Philadelphia, Pa., for defendants.

THOMPSON, District Judge. The two cases were heard together. The two plaintiff corporations operate under the same management twelve motor busses for the carrying of passengers for hire between Philadelphia and Wilmington, Del., Philadelphia and Atlantic City, N. J., and Philadelphia and New York City, N. Y. From the testimony adduced at the hearing, it appears that they carry passengers in interstate commerce only, but the drivers are permitted to accept passengers for interstate carriage at intermediate points. The two corporations maintain their executive offices and the terminus of all of their routes in the city of Philadelphia. Some of the busses have been registered under Delaware and others under New Jersey motor license laws and all under the Pennsylvania law.

On or about March 1, 1927, the plaintiff corporations received from one of the defendants, William B. Mills, superintendent of the department of public safety, bureau of police of the city of Philadelphia, a letter, as follows:

"You are hereby officially notified that on and after Thursday, March 10, 1927, persons operating motor busses carrying passengers for hire upon the highways of the city of Philadelphia, without having complied with the ordinances of council regulating same, and having in their possession a license issued by the department of public safety, will be arrested, and the owner or owners of said busses will be prosecuted in accordance with the law."

The ordinances referred to in the letter are as follows:

Ordinances of 1924, p. 271:

"Section 1. The council of the city of Philadelphia ordains that no motor bus for public use in the carriage of passengers for hire upon any of the streets, avenues, bridges, highways, boulevards or public places in the city of Philadelphia and running wholly or in part within such city under authority of any ordinance or otherwise, including sight-seeing busses, shall be run or operated after the effective date of this ordinance unless and until a license be first obtained by the owner, lessee or bailee of such vehicle from the department of public safety, bureau of police. A separate application shall be filed for each motor bus to be licensed hereunder upon a form provided by said bureau and containing the same information which is provided to be given in the first paragraph of section 2 of an ordinance approved July 2, 1915, ¦entitled 'An ordinance to regulate the operation of motor busses in the city of Philadelphia and providing for the license thereof': Provided that the superintendent of ¦the said bureau may in any case in his discretion dispense with so much of the information prescribed by said paragraph as in his judgment may be deemed unnecessary. Before any such license shall be issued the applicant or applicants therefor shall produce a receipt from the receiver of taxes showing the payment by the person or persons, firm, association or corporation in the sum of fifty (50) dollars for each vehicle so licensed.

"Sec. 2. This ordinance shall take effect July 15, 1924, and all licenses issued hereunder shall expire on June 30th next succeeding the date of issuance, unless sooner revoked by the department of public safety, bureau of police: Provided, that one-half only of the license fees specified in this ordinance shall be charged in the case of licenses issued after the first day of January and before the first day of July in each year.

"All ordinances or parts of ordinances inconsistent herewith be and the same are hereby repealed upon the taking effect of this ordinance.

"Approved the twenty-fourth day of June, A. D. 1924.

"W. Freeland Kendrick,
"Mayor of Philadelphia."

The first paragraph of section 2 of the ordinance approved July 2, 1915 (Ordinances of 1915, p. 347), to which reference is made in section 1 of the ordinance of 1924, reads as follows:

"That no motor bus shall be operated in or upon the streets of the city of Philadelphia unless a license be first obtained by the owner, lessee or bailee, from the department of public safety (bureau of police). Application for a license shall be made to said bureau of police upon a form provided by it, and shall give the name, age, and residence of the person or persons applying therefor; if a partnership or association,

the names, ages and residences of the person or persons composing such partnership or association; if a corporation, the corporate name and place of incorporation, with the names and residences of the officers. The applicant shall also state whether he is the owner, lessee, or bailee of the motor bus sought to be licensed, and the experience and qualifications as a driver of motor vehicles of the person who is to operate said motor bus, the route or routes over which it is proposed to operate such motor bus, together with such other information as the said bureau of police may require. A separate application shall be filed for each motor bus to be licensed, in which such motor shall be described by giving the make of the car, factory number, motor number and the state license number, together with the number of persons, including the driver, who are to be carried thereon. Every application shall be acknowledged before a notary public or other person duly authorized to administer oaths."

The Pennsylvania Motor Vehicle Law (Act April 27, 1925, P. L. 254), amending the Act of June 30, 1919 (P. L. 678), as amended by the Act of May 16, 1921 (P. L. 582), and by the Act of June 14, 1923 (P. L. 718), providing for the regulation of the use and operation of motor vehicles, requires their registration and the licensing of all operators thereof, for which it is required that fees be paid. The act of 1925, so far as its provisions are pertinent to the ordinances under attack, provides as follows:

"Section 6 (1925 P. L. 266). * * * The fees herein set forth for the registration of motor vehicles, trailers, and semi-trailers shall be in lieu of any other fees or taxes to be imposed by this commonwealth, or any subdivision thereof, and no city, borough, incorporated town, township, or county shall require or collect any registration or license fee or tax for any motor vehicle or license from any operator thereof, except as to motor vehicles transporting passengers for pay or hire within the limits of any city or from points within such city to points outside of the city limits. * * *

"Section 12 (1925 P. L. 281). * * * Provided, that any city may regulate the transportation by motor vehicles of passengers for pay within the limits of such city or from points in the city to points beyond the city limits, and make and enforce regulations for the operation of such vehicles, not inconsistent with this act, and designate

18 F.(2d)—63

certain streets upon which such vehicles may be operated."

The plaintiffs contend that the enforcement of the ordinance of June 24, 1924, requiring each of them to take out a license thereunder and to furnish the information and to pay the license fees required therein, would constitute an unwarranted interference by the defendants with the plaintiff's business of carrying passengers exclusively in interstate commerce for hire, and would impose an undue burden upon their business in interstate commerce, in violation of the Constitution and laws of the United States.

The defendants, through the city solicitor, contend that the ordinance, authorized as it is by the Motor Vehicle Law, represents a legitimate exercise of the police power of the state, reserved to it under the Tenth Amendment to the Constitution; that it only incidentally affects interstate commerce, the ordinance being directed to the regulation of all motor busses serving the public in both interstate and intrastate carriage of passengers for hire upon the highways of the city of Philadelphia; that the amount of the license fee is not unreasonable, as it is not levied as a tax for raising revenue for general purposes, but the sum of the fees collected is no more than sufficient to pay the cost to the city of its regulation of traffic by public carriers by motor bus and of the administration of the registration and licensing features of the ordinance; that it is a police regulation, necessary for the safety and convenience of the public and the maintenance of good order in the use of its streets, for the benefit of its citizens and the public generally.

[1] We are not dealing here with a case where the ordinance adopted under the authority of the state law conflicts with any legislation upon the subject by Congress, as in the cases of Adams Express Co. v. New York, 232 U. S. 14, 34 S. Ct. 203, 58 L. Ed. 483, and Crutcher v. Kentucky, 141 U. S. 47, 11 S. Ct. 851, 35 L. Ed. 649. Nevertheless any attempt by the states, directly or through their municipalities, to exercise such control over interstate commerce as to directly interfere with its operation must be such as does not impose unreasonable burdens on that commerce nor subject it to unreasonable demands. Crutcher v. Kentucky, supra; Western Union Telegraph Co. v. Kansas, 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355; Adams Express Co. v. New York, supra; Sault Ste. Marie v. International Transit Co., 234 U.

S. 333, 34 S. Ct. 826, 58 L. Ed. 1337, 52 L. R. A. (N. S.) 574; Southern Railway Co. v. Reid, 222 U. S. 444, 32 S. Ct. 145, 56 L. Ed. 257. Congress has not yet seen fit to occupy the field of control of that part of interstate commerce represented by the carriage of passengers for hire by motor vehicles upon the open highways of the respective states.

[2] The question, then, is whether the exercise of the police power through the ordinances in question is such as to bring the case within the forbidden restrictions against interfering or burdening such commerce and thereby rendering the regulation invalid regardless of the fact that it was intended as a police regulation. In order to determine that question, it is necessary to take into consideration the ever-changing condition in the development of the traffic at which it is directed, common to our great cities, which has arisen, due to the extensive present use of motor vehicles. Are these ordinances necessary as police regulations, for the enforcement of good order and the protection of the safety of citizens of Philadelphia and the public generally?

It is contended by the plaintiffs that the requirements for the enforcement of good order and the protection of the public may go no further than is provided for by regulation under the general laws of the state requiring registration and licenses for the use of the highways, and including provisions for securing some compensation for the use of facilities provided at great cost from the class for whose needs they are essential, and whose operations over them are peculiarly injurious. Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385.

The purposes of the Pennsylvania statutes apply to all vehicles operating anywhere throughout the state upon any of its highways, and not only within the more open and rural districts, but in the villages, boroughs, towns, and cities. Municipalities are prohibited from adopting any local regulation of such traffic inconsistent with the general purposes of the act, except, however, in instances in which the Legislature recognizes the necessity of granting power to classes of municipalities to further regulate traffic in such manner as congested conditions demand for the safety and protection of the public therein and the good order of public traffic.

In order to appreciate the necessities of the situation which induced city councils to pass the ordinances under attack and the Legislature to extend the power to cities, we must consider what we see about us. The population of the city of Philadelphia has increased to approximately 2,000,000. It has hundreds of miles of streets, many of which are narrower than those in municipalities more recently laid out, barely wide enough to accommodate the traffic of 25 years ago, when the motor vehicle was unknown, but now daily congested through the endless procession of automobiles, motor trucks, and motor busses, which also, in the exigencies of business and pleasure, occupy much of the roadways while stopping to load and unload, or while left parked along the sidewalks.

Added to the heretofore constantly increasing number of passenger automobiles and motor trucks carrying merchandise, has now come the motor bus for the carriage of passengers within the city limits and beyond. These motor busses are built with the design to contain as many passengers as can be profitably carried. They occupy a large part of the space upon the streets through which they travel, and their weight and size is such that, unless driven with due care by skillful operators, they become a menace to pedestrians at the street crossings and to other vehicles and their occupants in the use of the roadways.

Is there anything unreasonable in requiring those operating vehicles of this class to do what the city ordinance prescribes? The ordinance of 1924 prohibits the motor busses in question from being run or operated until a license is first obtained from the bureau of police and requires that a separate application containing certain information shall be filed for each motor bus. The information required of a corporation is as follows: The business address and state of incorporation; the names and residences of its officers; whether or not the applicant is the owner, lessee, or bailee of the vehicle, and, if either of the latter, the name and residence of the owner; the make, factory, and engine number, and state license number, of the vehicle; the number of persons to be carried (a) seated, or (b) standing; whether it is a single or double deck bus; the exact route of the bus giving the streets traversed in Philadelphia only; also the starting point and terminus of interstate and intercity busses. The license issued requires that it shall be displayed in a fixed and conspicuous place in the vehicle licensed.

The application for the motor bus driver's license requires a statement of his name and residence, age, height, color of hair, color of eyes, weight, nationality, and whether

black or white; the number of his state operator's license; the number of years' experience he has had in operating motor vehicles; whether he has ever driven a motor bus or other public vehicle; if so, how long, and the name and address of the person employing him at the time; also whether or not he has been convicted of any crime. He is required to furnish a photograph, which is to be affixed to his bus driver's identification card. He is also required to obtain references from two reputable business men concerning his good moral character and good repute.

It is claimed on the part of the plaintiffs that as much of the information as can reasonably be required for the identification of the plaintiff's business and is reasonably necessary for police supervision of their operations in the city may be obtained from the state highway department from which they have already obtained licenses. But if the requirement that a city license be obtained and that a license fee be paid is not an unlawful exercise of the police power, the mere fact that the applicant is required to restate some information previously given and on file in the state highway department cannot, as a practical matter, be considered to place an undue or unreasonable burden upon any one. And to have that information, and the additional information required, where it can be speedily and conveniently referred to, is considered by the authorities best qualified to judge, as decidedly advantageous for the proper administration and supervision by the bureau of police.

It is surely essential to the orderly supervision of traffic of this nature that the streets to be traversed in Philadelphia in the route of the busses and their starting point and terminus shall be designated. And there are good reasons also for requiring that, in the identification of busses licensed to traverse certain streets, each bus shall have placed upon it the city license plate or tag. How else would the officers assigned by the bureau of police be able to supervise the operation of any particular line of busses? Public busses cannot be operated to the advantage of their operators and the public, unless they traverse designated routes, so that the public will know where they may be taken on as passengers and where they may alight. These routes being, therefore, necessarily fixed, it is not unreasonable to require their designation to be filed for immediate reference in the appropriate office. Such requirements of information for the identification of

the busses and their routes and their owners are considered by councils and the police authorities necessary, in the exercise of the police power of supervision and inspection, for the general purpose of public safety and of maintenance of good order in traffic. The power claimed is analogous to the right of inspection, for the safety of the public, of foodstuffs, and dangerous articles of commerce, which has been sustained as a lawful exercise of the police power. Savage v. Jones, 225 U. S. 501, 32 S. Ct. 715, 56 L. Ed. 1182; Standard Stock Food Co. v. Wright, 225 U. S. 540, 32 S. Ct. 784, 56 L. Ed. 1197; Red "C" Oil Co. v. North Carolina, 222 U. S. 393, 32 S. Ct. 152, 56 L. Ed. 240.

It is also the judgment of the city authorities that it is necessary, in the exercise of supervision of traffic, that the bus driver be required to be licensed for the particular sort of work in which he is engaged, driving, as he must, a heavy vehicle, occupying a large part of the space upon the highway, and being intrusted with the safety of life and limb of passengers, as well as others, upon the highways. Unless he is identified by the card which the police require him to have, with his photograph thereon, it would be impossible for an officer to determine whether or not he is the person who is authorized under the license to drive the vehicle. It is a valid exercise of police power to require various things of those engaged in interstate traffic. A railroad traversing the city streets may be required to place safety gates upon the highway, or to ring a bell or sound a whistle on approaching crossings. The engineer may be required to demonstrate his skill and ability to operate a railroad locomotive, without placing undue burdens upon interstate commerce. Smith v. Alabama, 124 U. S. 465, 8 S. Ct. 564, 31 L. Ed. 508. None of the details of information, which the city authorities have deemed necessary, appear to be unreasonable; but, to the contrary, appear to be founded on the necessities of reasonable supervision of the use of the city streets.

Congress may or may not in the future legislate concerning interstate passenger traffic by motor bus, and thereby place under federal authority the control of an interstate business which is as yet comparatively local, or it may leave that control in the hands of the states; but it has not yet asserted the power it undoubtedly has. The only question, then, is whether the requirement of a license and the exacting of a license fee of $50 for each motor bus is imposing a burden

upon interstate commerce which interferes with the right of the plaintiffs and others in like situation to carry passengers for hire.

In Adams Express Co. v. New York, supra, a factor was presented which does not exist in the present case. Although in Mr. Justice Hughes' opinion he says, "As was said by this court in Crutcher v. Kentucky, 141 U. S. p. 58 [11 S. Ct. 851, 35 L. Ed. 649], 'a state law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it,'" in that case, as well as in the Crutcher Case, the business of the plaintiff was that of an express company, whose interstate transportation had already been the subject of regulation by Congress. In the case of Sault Ste. Marie v. International Transit Co., supra, the ordinance held to be invalid related to the maintaining of ferries across the Ste. Marie river, between that city and the opposite shore in the province of Ontario, which was clearly and exclusively commerce between a state and a foreign country, and there was no valid ground for the exercise of the police power.

There is nothing in the ordinances before us which applies to interstate commerce except incidentally. The ordinance applies to all motor busses for hire operating within the city limits. It is conclusively shown by the evidence that the fee of $50 is not in the nature of a privilege tax, but is only sufficient to defray the expenses of the administration of the ordinance. It also appears that the average monthly receipts from the 12 busses operated by the plaintiff amount to from $18,000 to $20,000. The annual pecuniary burden upon the plaintiffs for each bus would be in the ratio which $50 bears to that amount. If, in the absence of national legislation covering the subject, a state may prescribe regulations necessary for public safety and order, in respect to the operation upon its highways of all motor vehicles, those conveying passengers in interstate commerce as well as others, and to that end may require the registration of such vehicles and the licensing of their drivers, charging therefor reasonable fees, graduated according to the horse power of the engine (Hendricks v. Maryland, supra), and if it is not an interference with interstate commerce for a state to forbid by statute any engineer to operate a railroad train without first undergoing an examination touching his fitness and obtaining a license for which a fee is charged (Smith v. Alabama, supra),

why, when applied to the crowded streets of a great city, is this ordinance invalid as a regulation of interstate commerce?

To use Mr. Justice Matthews' language, cited by Mr. Justice McReynolds in Hendrick v. Maryland, supra: "It is a misnomer to call them such. Considered in themselves, they are parts of that body of the local law which, as we have already seen, properly governs the relation between carriers of passengers and merchandise and the public who employ them, which are not displaced until they come in conflict with express enactments of Congress in the exercise of its power over commerce, and which, until so displaced, according to the evident intention of Congress, remain as the law governing carriers in the discharge of their obligations, whether engaged in the purely internal commerce of the state or in commerce among the states." I am of the opinion, therefore, that the enforcement of the ordinance of 1924 with reference to section 2 of the ordinance of 1915 is not an unconstitutional imposition of a burden upon the business of the plaintiffs in interstate commerce.

Reference was made, during the hearing, to an ordinance of January 29, 1927, providing that no license to operate motor busses shall be granted unless the applicant shall file with the city solicitor a bond in the amount of $5,000 for each motor bus, conditioned for the payment of all damages to persons or property that may be caused by the operation of the bus within the city, and providing that any person or party suffering damage shall have the right to sue thereon, with the proviso that the city solicitor may waive the bond in case the operator of the motor bus carries insurance for each bus covering the payment of such damages. The ordinance of 1927 is not charged in the bill, nor does the plaintiff pray for relief as against that ordinance. Its validity as an exercise of the police power is doubtful. Crutcher v. Kentucky, supra; Adams Express Co. v. New York, supra. It is apparently an attempt to protect the city and the public from financial loss in case of damage to property or persons through the operation of the plaintiff's business. In my opinion, the ordinances are severable, and the earlier ones may be enforced without invoking the latter. The restraining order was granted and the preliminary injunction is applied for as against the earlier ordinances, and a relief against the latter one was not invoked.

The restraining order will therefore be

vacated. A preliminary injunction against the enforcement of the ordinance of 1924, applying thereto the provisions of section 2 of the ordinance of 1915, is refused.