[No. 21486. Department One. April 22, 1929.]

GEO. B. WILLIAMS *et al., Respondents,* v. JOHN C. DENNEY, *as Director of Public Works, Appellant.*[1]

*The Attorney General* and *H. C. Brodie, Assistant,* for appellant.

*W. R. Crawford,* for respondents.

[1]Reported in 276 Pac. 858.

HOLCOMB, J.—This appeal is from a judgment of the superior court for King county, granting a temporary injunction restraining appellant, as the director of public works, from enforcing against respondents any of the provisions of the auto transportation act, being chapter 111, Laws of 1921, p. 338 (Rem. Comp. Stat., § 6387), with amendments. The matter was heard upon the pleadings and affidavits. From admitted or undenied statements in the pleadings and affidavits the following facts are shown:

On or about June 23, 1928, each of the respondents was arrested in King county, Washington. The complaints were filed in a justice court, charging each of them with operating as an auto transportation company without a certificate of public convenience and necessity.

At the time of the arrest, each of them had a sedan car carrying only a California motor vehicle license. Each of them was operating, and purposed to continue to operate, ordinary motor vehicles as a common carrier. After their arrest, they employed counsel, who, with them, called upon appellant and stated to appellant that they desired to operate as auto transportation companies in exclusively interstate service between Seattle and California, but that they would not file any insurance policy or bond as required by the auto transportation act. They were informed that a certificate would be issued as a matter of course upon filing application, paying filing fee of twenty-five dollars each, and each filing insurance policy, but that no certificate would be issued until such insurance policies were filed.

Appellants showed that respondents could have obtained insurance of the character required by statute at a cost of $291.

Respondents made no further effort to comply with

the law, but promptly filed their action in equity in King county, seeking an injunction to restrain appellant from interfering with their operation as motor vehicle common carriers between Seattle and California over the Pacific Highway through this state, it being a Federal aided road.

The complaint alleges a willingness to comply with all of the provisions of the auto transportation act, except the filing of an insurance policy or bond. The complaint avers that such requirement would be violative of the Federal aid legislation and of the commerce clause of the United States constitution. (Art. I, § 8, Clause 3.)

The superior court issued a restraining order, immediately restraining appellant from interfering with the operation of respondents pending a hearing on the application for a temporary injunction. Appellant was ordered to show cause on a day certain why a temporary injunction should not be granted. He made return to the show cause order in opposition to its issuance, filed affidavits in support thereof, and on a later date the matter came on for hearing in the court below.

It was also shown by the pleadings and by uncontradicted affidavits that, since the decision in *Buck v. Kuykendall*, 267 U. S. 307, the department of public works has issued certificates to interstate applicants as a matter of right, upon complying with the other features of the Washington statutes. It is further shown that since the above decision, the department has issued sixty-two interstate certificates, and the holders of all such certificates have filed the required liability insurance.

The lower court refused to quash the restraining order, and held that the temporary injunction should be granted, solely upon the ground that the require-

ment of the Washington statute for such bond or liability insurance was violative of the commerce clause of the Federal constitution.

In deciding the case, the trial court said:

"The plaintiffs, as the owners of certain automobiles and desiring to operate the vehicles for the transportation of passengers in interstate commerce between the city of Seattle and points in Oregon and California, applied to the director of public works for a permit provided for under the amendment of 1921 to the public utilities act. No formal written application was made, no license fee tendered for the reason that the director stated to the applicants (the plaintiffs here) that no such application would be considered until and unless the applicants furnished the liability insurance provided for under chapter 111, Laws of 1921. It would therefore follow that the making of the formal application and tender of the license fee would have been useless and not essential to the relief demanded if the insurance provision infringes upon the commerce clause of the Federal Constitution. . . .

"It is, therefore, my conclusion that the motion to quash must be denied and the temporary injunction granted. In passing upon this question my opinion is limited strictly to the interference with interstate commerce by the exaction of the insurance required under the statute."

Section 5, chapter 111, Laws of 1921, p. 341, (Rem. Comp. Stat., § 6391) provides:

"The commission shall in the granting of certificates to operate any auto transportation company, for transporting persons, and/or property, for compensation require the owner or operator to first procure liability and property damage insurance from a company licensed to make liability insurance in the state of Washington or a surety bond of a company licensed to write surety bonds in the state of Washington on each motor propelled vehicle used or to be used in transporting persons, and/or property, for compensa-

tion, in the amount of not to exceed five thousand dollars for any recovery for personal injury by one person and not less than ten thousand dollars, and in such additional amount as the commission shall determine, for all persons receiving personal injury by reason of one act of negligence and not to exceed one thousand dollars for damage to property of any person other than the assured, and maintain such liability and property damage insurance or surety bond in force on each motor propelled vehicle while so used, each policy for liability or property damage insurance or surety bond required herein, shall be filed with the commission and kept in full force and effect, and failure so to do shall be cause for the revocation of the certificate.''

Respondents contend that chapter 111, Laws of 1921, p. 338, as amended, and all its provisions are unconstitutional, being contrary to the commerce clause of the Federal constitution and the Federal aid legislation.

Nothing but the mere assertion and the allegations of the complaint are urged here to the effect that the statute is in violation of the Federal aid legislation. We shall therefore content ourselves by saying that we see nothing in the Federal aid legislation of Congress and its acceptance by this state that is in any way infringed by the legislation in question.

In a case appealed from an inferior Federal court, reported in 19 Fed. (2d) 256, to the supreme court of the United States, reported in 276 U. S. 245, 48 Sup. Ct. Rep. 230, *Interstate Busses Corporation v. Blodgett,* the supreme court apparently considered that feature of such minor importance as not to be useful to discuss. Since respondents can cite no cases in support of their contention, we consider it untenable.

We shall also brush aside the minor features urged by appellants in urging that the temporary injunction entered by the trial court should not have been granted

until the applicant had complied as fully as possible with valid portions of the law, which was admittedly not done; and that the temporary injunction granted is more comprehensive than the injunction prayed by respondents, and pass at once to determine the validity of our statute under the commerce clause of the Federal constitution.

■ This court has held in *Northern Pacific R. Co. v. Schoenfeldt*, 123 Wash. 579, 213 Pac. 26, referring to this express provision of our statute, that it was not violative of the commerce clause of the Federal constitution. Our decision in that case was, in effect, overruled in so far as we held that the requirement that an interstate operator could be required to show public convenience and necessity before obtaining a certificate. *Buck v. Kuykendall, supra.*

The *Buck* case, *supra,* did not decide, however, that a state could not make reasonable regulations of interstate commerce carriers. Apparently, that court has not been disposed to further extend the application of the decision in the *Buck* case. Under many other decisions of that court, there seems to be left to the states some latitude in the control and regulation of its own highways and the users thereof, even in interstate commerce. That court has held that a requirement of liability insurance does not violate the Fourteenth Amendment of the Federal constitution. *Packard v. Banton,* 264 U. S. 140.

It was recently held in *Clark v. Poor,* 274 U. S. 554; in *Morris v. Duby,* 274 U. S. 135; and in *Hess v. Pawloski,* 274 U. S. 352, that users of state highways are subject to regulation by the state to insure safety and convenience and the conservation of the highways although engaged exclusively in interstate commerce.

In the *Clark* case, *supra,* the requirement of liability insurance by the statute of Ohio, from which the

case came, was abandoned by the attorney general of Ohio and the court said there was no occasion to consider the question.

In *Sprout v. City of South Bend*, 277 U. S. 163, 48 Sup. Ct. Rep. 502, the court held that a provision of a municipal ordinance requiring bus operators to obtain liability insurance from insurance companies authorized to do business in the state was reasonable within the fourteenth amendment to the constitution, as applied to operators, and further held, respecting the commerce clause of the constitution, that, in the absence of Federal legislation covering the subject, nondiscriminatory regulations may be imposed even on vehicles used exclusively in interstate commerce on highways for the purpose of insuring the public safety and convenience; and a license may be exacted in an amount no larger than is reasonably required to defray expense of administering regulations, and that such power may be exercised by a city if authorized by appropriate legislation. It was there held that the charges under that city ordinance were unreasonable and could not be sustained as a police measure. It was, although not essential to a decision in that case, observed:

"Objection under the commerce clause is made also to the requirement of liability insurance. There being grave dangers incident to the operation of motor vehicles, a state may require users of such vehicles on the public highways to file contracts providing adequate insurance for the payment of judgments recovered for certain injuries, resulting from their operation. *Packard v. Banton*, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596. Compare *Kane v. New Jersey*, 242 U. S. 160, 167, 37 S. Ct. 30, 61 L. Ed. 222; *Hess v. Pawloski*, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091; *Clark v. Poor*, 274 U. S. 554, 557, 47 S. Ct. 702, 71 L. Ed. 1199. It may, consistently with the Federal Constitution, delegate by appropriate legislation a

part of this power to a municipality. Such provisions for insurance are not, even as applied to busses engaged exclusively in interstate commerce, an unreasonable burden on that commerce, if limited to damages suffered within the state by persons other than the passenger. Whether the insurance here prescribed is, because of its scope, obnoxious to the commerce clause, we need not inquire. Compare *Barrett v. New York,* 232 U. S. 14, 33, 34 S. Ct. 203, 58 L. Ed. 483; *Michigan Public Utilities Commission v. Duke,* 266 U. S. 570, 577, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105.''

We call attention to the above case citations, and shall not recite or discuss them.

Whether or not the above quotation constitutes dictum, apparently that court intimates the validity of legislation requiring users of motor vehicles engaged in interstate commerce to file contracts providing adequate insurance for the payment of judgments, if limited to damages suffered within the state by persons other than the passenger.

Why there should be such distinction, we are unable to perceive. Certainly those being carried through the state in interstate commerce by such common carriers as those in question are as greatly affected and as deeply concerned in the question, whether, if injured by their carrier, they may obtain financial relief, as are those suffering damages ''other than the passenger.''

Interstate railway carriers have property within the state available for the recovery of damages, and such carriers have always been held liable for negligent injury within a state of interstate passengers as well as intrastate passengers if jurisdiction could be obtained of such carrier in such state.

These interstate busses are often comparatively irresponsible financially, frequently incurring liabilities wholly incomparable to their available assets.

"Legal liability without financial responsibility is a barren right to one who sustains injury by the wrongful act of another.

"A peremptory requirement that, before one brings a dangerous instrumentality into public places, the owner must first provide adequate security that those who suffer personal injury through the negligent use thereof shall be assured of recompense, would be no greater interference with fundamental rights than the instances just cited." *In re Opinion of the Justices,* 251 Mass. 569, 147 N. E. 681.

Upon the general question of the validity of this legislation, we know of no better reasoning, or more weighty authority, except the authority of the supreme court of the United States, upon this question than that of the supreme court of Massachusetts, in a very well considered opinion cited above, to the legislative body of Massachusetts. We quote with high approval what was said upon this question:

"Regulations of the kind prescribed by the proposed bill may apply to interstate commerce on the same terms as to domestic travelers. The states cannot enact laws for the specific end of regulating interstate commerce; but they may enact laws for the protection of the general public, against apprehended harm including that caused by those engaged in interstate commerce. The power of the several states to 'provide for the establishment, maintenance, and control of public highways, turnpike roads' and like conveniences and necessities has been recognized in numerous decisions of the United States supreme court. *New Orleans Gas Co. v. Louisiana Light Co.,* 115 U. S. 650, 661, 6 S. Ct. 252, 29 L. Ed. 516; *Fair Haven & Westville Railroad v. New Haven,* 203 U. S. 379, 390, 27 S. Ct. 74, 51 L. Ed. 237. 'Even interstate business must pay its way.' *Postal Telegraph-Cable Co. v. Richmond,* 249 U. S. 252, 259, 39 S. Ct. 265, 266 (63 L. Ed. 590). That proposition is apt to describe the burden which a state may place upon interstate commerce, in common with all other business and pleasure using highways,

for the protection of the life and safety of other travelers. There is a great field for the valid exercise of the police power by the several states for the common welfare although, incidentally but not primarily and mainly, interstate commerce may be affected and regulated. See *Commonwealth v. People's Express Co.*, 201 Mass. 564, 578, 88 N. E. 420, 131 Am. St. Rep. 416, for a collection of cases. *Commonwealth v. O'Neil*, 233 Mass. 535, 124 N. E. 482; *Western Union Telegraph Co. v. Commercial Milling Co.*, 218 U. S. 406, 31 S. Ct. 59, 54 L. Ed. 1088, 36 L. R. A. (N. S.) 220, 21 Ann. Cas. 815; *Missouri Pacific Railway v. Larabee Flour Mills Co.*, 211 U. S. 612, 29 S. Ct. 214, 53 L. Ed. 352; *Atlantic Coast Line Railroad v. Georgia*, 234 U. S. 280, 34 S. Ct. 829, 58 L. Ed. 1312; *Price v. Illinois*, 238 U. S. 446, 35 S. Ct. 892, 59 L. Ed. 1400. That principle has been given direct application to state statutes touching the operation of motor vehicles upon the highways of a state both by nonresidents and by those engaged in interstate commerce. 'In the absence of national legislation covering the subject a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles—those moving in interstate commerce as well as others.' *Hendrick v. Maryland*, 235 U. S. 610, 622, 35 S. Ct. 140, 59 L. Ed. 385; *Kane v. New Jersey*, 242 U. S. 160, 168, 37 S. Ct. 30, 61 L. Ed. 222.

''There is nothing inconsistent with the conclusion that the proposed statute would be valid in this respect in the recent decisions of *Michigan Public Utilities Commission v. Duke*, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, where compulsory interstate commerce as a common carrier was sought to be imposed upon one carrying on interstate commerce as a private person, nor in *Buck v. Kuykendall*, 267 U. S. 307, 45 S. Ct. 324, 327, 69 L. Ed. 623, and *Bush & Sons Co. v. Maloy*, 267 U. S. 317, 45 S. Ct. 326, 327, 69 L. Ed. 627 (both decided March 2, 1925), where the element of discretionary power altogether to exclude interstate commerce was involved, in all three decisions state statutes being stricken down.''

Respondents also cite *International Motor Transit Co. v. Seattle,* 141 Wash. 194, 251 Pac. 120, as supporting their contention. That case is not at all apt. In that case we held, in line with the decision in the *Buck* case, *supra,* that Seattle could not by ordinance burden interstate commerce by requiring an interstate common carrier's driver to submit to onerous conditions and procure a driver's license for operating an interstate motor stage.

The requirements of our statute are reasonable as regulations under the police power of the state, and not obstructive of, nor undue burdens upon, interstate commerce. *Northern Pacific R. Co. v. Schoenfeldt, supra.*

Since Congress has not occupied the field in question by controlling legislation, in which case the state would be excluded, we are of the opinion that our regulations in no way contravene the commerce clause of the Federal constitution.

The judgment of the lower court is therefore reversed, and the action dismissed.

MITCHELL, C. J., TOLMAN, FULLERTON, and BEALS, JJ., concur.