### COBB et al. v. DEPARTMENT OF PUBLIC WORKS OF STATE OF WASHINGTON et al.

No. 481.

District Court, W. D. Washington, S. D.

July 11, 1932.

Marion A. Zioncheck and W. R. Bell, both of Seattle, Wash., for plaintiffs.

John H. Dunbar, Atty. Gen., State of Washington, and John C. Hurspool, Asst. Atty. Gen., State of Washington, for defendants Department of Public Works and Fred K. Baker.

Before WILBUR, Circuit Judge, and McNARY and CUSHMAN, District Judges.

CUSHMAN, District Judge.

Plaintiffs, engaged solely in carrying passengers for hire by autobus between Seattle, Wash., and Portland, Or., sue to enjoin the defendants the Department of Public Works of the State of Washington, and its director, from revoking or canceling the certificates heretofore issued plaintiffs by defendants authorizing them to use the public highways of Washington. Plaintiffs further ask for general relief.

Defendants have moved to dismiss and answered.

This suit was begun May 7, 1932, and heard before three judges May 26, 1932, upon defendants' motion to dismiss and upon the petition and answer as upon motion for decree upon bill and answer.

In Hammond v. Schappi Bus Line, 275 U. S. 164 at pages 171, 172, 48 S. Ct. 66, 69, 72 L. Ed. 218, the court said: "Before any of the questions suggested, which are both novel and of far reaching importance, are passed upon by this court, the facts essential to their decision should be definitely found by the lower courts upon adequate evidence."

The manner in which the present cause was submitted excuses, if it does not require, a full statement of the issues made by the pleadings and the statements of counsel in presenting the cause.

The basis of the suit is that Remington's Compiled Statutes of Washington 1922, §§ 6390 and 6391, violate article 1, § 8, cl. 3, of the Constitution, providing that: "The Congress shall have Power * * * To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

The petition, in part, alleges: "IV. That heretofore the defendants issued to the plaintiffs certificates authorizing them to use the public highways in the State of Washington and in the State of Oregon between the Cities of Seattle and Portland for the purpose of transporting passengers by auto bus between said termini, but before so doing exacted from them an indemnity surety bond as above referred to; that recently the sureties on said indemnity bonds have canceled the same, and the plaintiffs have attempted to secure other indemnity bonds from all other accredited Surety Companies in the State of Oregon and in the State of Washington, but all of them have refused to accept the risk or become sureties for the plaintiffs upon the required indemnity bonds, and have refused to give any reason for their actions, although there has been no change in the conditions affecting the risk, and the defendants have notified the plaintiffs that unless the required bonds are furnished and filed before May 10th, 1932 the certificates heretofore issued to them will be revoked and cancelled, and the plaintiffs will be arrested and prosecuted if they undertake thereafter to use the highways between said termini for the transportation of passengers by auto stage."

Defendants' answer, in part, is as follows: "II. Answering paragraphs II and IV of said petition, these defendants deny that the laws of the state of Washington require that the indemnity bond or liability insurance required to be furnished by interstate carriers shall protect and indemnify both passengers and the general public, and deny that these

defendants exacted such liability insurance or indemnity bond from said plaintiffs. * * * "

The answer here copies sections 6391 and 6394 of Remington's Compiled Statutes, which are set forth later in this opinion, and continuing, alleges:

"That in accordance with such statute these defendants require all carriers, both intra and interstate, before the issuance of a certificate of public convenience and necessity to them, to furnish and to thereafter keep in force liability insurance or indemnity bond containing an endorsement as to the liability thereunder, as shown by exhibit 'A', which is hereto attached and made a part hereof, and that such liability insurance or indemnity bond was required of plaintiffs, and admit that plaintiffs at the time of the issuance to them of such certificate of public convenience and necessity furnished to these defendants such liability insurance; that thereafter these defendants received notice from the insurers under such liability insurance that such insurance had been cancelled in accordance with the terms of such endorsement, such cancellation to take effect May 10, 1932, and that thereupon these defendants notified plaintiffs of this fact and that they must furnish proper liability insurance in lieu thereof by May 10, 1932, or such certificate of public convenience and necessity therefor" (theretofore) "issued to them would be cancelled.

"Further answering said paragraph, these defendants allege that they have no knowledge or information as to whether the said plaintiffs have been unable to secure other liability insurance or indemnity bonds and deny that they have threatened to have the plaintiffs arrested and prosecuted if they undertook to use the highways of the state in said interstate passenger operation without the filing of such liability insurance or indemnity bond, but admit that unless such liability insurance and indemnity bond is furnished these defendants will seek to have such operations by plaintiffs enjoined."

The bond indorsement, referred to in the answer, is, in so far as pertinent, as follows:

"Endorsement.

"The policy to which this endorsement is attached is written in pursuance of and is to be construed in accordance with chapter 111, of the Session Laws of 1921, and the Rules and Regulations of the Department of Public Works of Washington, adopted thereunder. The policy is to be filed with the State in accordance with said statute.

"In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby waives a description of the vehicles to be insured hereunder and agrees to pay any final judgment for personal injury, including death resulting therefrom, and, or damage to property other than the assured's, caused by any and all motor vehicles and/or trailers and semitrailers and/or other equipment operated by the assured pursuant to its certificate of public convenience and necessity issued by the Department of Public Works of Washington in accordance with Chapter 111, Session Laws of 1921, within the limits set forth in the schedule shown hereon, and further agrees that upon its failure to pay any such final judgment such judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment. Nothing contained in the policy or any endorsement thereon, nor the violation of any of the provisions thereof, by the assured, shall relieve the Company from liability hereunder or from the payment of any such judgment. * * * "

While the answer states that the defendants "admit that unless such liability insurance and indemnity bond is furnished these defendants will seek to have such operations by plaintiffs enjoined," and while the cancellation of bonds became effective May 10, 1932, there has been no suggestion of any suit brought by defendants to have plaintiffs' operations enjoined.

█ Primarily the task of determining the intent of the State legislature is that of the State's courts. Dorchy v. Kansas, 264 U. S. 286, 290, 44 S. Ct. 323, 68 L. Ed. 686.

Section 266 of the Judicial Code, as amended (title 28, USCA § 380), in part provides: "It is further provided that if before the final hearing of such application a suit shall have been brought in a court of the State having jurisdiction thereof under the laws of such State, to enforce such statute or order, accompanied by a stay in such State court of proceedings under such statute or order pending the determination of such suit by such State court, all proceedings in any court of the United States to restrain the execution of such statute or order shall be stayed pending the final determination of such suit in the courts of the State. Such stay may be vacated upon proof made after hearing, and notice of ten days served upon the attorney general of the State, that the suit in the State courts is not being prosecuted with diligence and good faith. * * * "

Remington's Compiled Statutes of Wash-

ington 1922, sections 6390, 6391, 6393, and 6394, are as follows:

"§ 6390. *Certificate of Public Convenience and Necessity.* No auto transportation company shall hereafter operate for the transportation of persons and, or, property for compensation between fixed termini or over a regular route in this state, without first having obtained from the commission under the provisions of this act a certificate declaring that public convenience and necessity require such operation; but a certificate shall be granted when it appears to the satisfaction of the commission that such person, firm or corporation was actually operating in good faith, over the route for which such certificate shall be sought on January 15, 1921. Any right, privilege, certificate held, owned or obtained by an auto transportation company may be sold, assigned, leased, transferred or inherited as other property, only upon authorization by the commission. The commission shall have power, after hearing, when the applicant requests a certificate to operate in a territory already served by a certificate holder under this act, only when the existing auto transportation company or companies serving such territory will not provide the same to the satisfaction of the commission, and in all other cases with or without hearing, to issue said certificate as prayed for; or for good cause shown to refuse to issue same, or to issue it for the partial exercise only of said privilege sought, and may attach to the exercise of the rights granted by said certificate to such terms and conditions as, in its judgment, the public convenience and necessity may require. (L. '21, p. 341, § 4.)"

"§ 6391. *Liability and Property Damage Insurance.* The commission shall in the granting of certificates to operate any auto transportation company, for transporting persons, and, or, property, for compensation require the owner or operator to first procure liability and property damage insurance from a company licensed to make liability insurance in the state of Washington or a surety bond of a company licensed to write surety bonds in the state of Washington on each motor-propelled vehicle used or to be used in transporting persons, and, or property, for compensation, in the amount of not to exceed five thousand dollars for any recovery for personal injury by one person and not less than ten thousand dollars and in such additional amount as the commission shall determine, for all persons receiving personal injury by reason of one act of negligence and

not to exceed one thousand dollars for damage to property of any person other than the assured, and maintain such liability and property damage insurance or surety bond in force on each motor propelled vehicle while so used, each policy for liability or property damage insurance or surety bond required herein, shall be filed with the commission and kept in full force and effect and failure so to do shall be cause for the revocation of the certificate. (L. '21, p. 341, § 5.)".

"§ 6393. *Penalty for Violation.* Every officer, agent or employee of any corporation, and every other person who violates or fails to comply with, or who procures, aids or abets in the violation of any provisions of this act, or who fails to obey, observe or comply with any order, decision, rule or regulation, director, demand or requirement, or any part of provision thereof, is guilty of a gross misdemeanor and punishable as such. (L. '21, p. 342, § 7.)"

"§ 6394. *Scope of Act.* Neither this act nor any provision thereof shall apply or be construed to apply to commerce with foreign nations or commerce among the several states of this Union except in so far as the same may be permitted under the provisions of the Constitution of the United States and the acts of congress. (L. '21, p. 343, § 8.)"

While defendants have answered, denying "that the laws of the State of Washington require that the indemnity bond required of interstate carriers shall protect and indemnify both passengers and the general public," they state, in their brief, that:

"Since the decision in Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286, while the department has required interstate operators to acquire certificates of public convenience and necessity before operating, such certificates had been issued as a matter of course upon the compliance by the applicant with the provisions of the state law, including the filing of the liability insurance. This course of procedure seems to have been approved in Clark v. Poor, 274 U. S. 554, 556, 47 S. Ct. 702, 71 L. Ed. 1199, and followed in Cannonball Transportation Co. v. American Stages (D. C.) 53 F.(2d) 1051, 1053. * * *

"It will be observed that section 6391, which prescribes the terms of the liability insurance, does not specify whether the insurance to be filed shall be for the protection of the passengers carried or for the protection of the public using the highways or for both. The language would seem to be broad enough

to cover both, and in the case of intrastate carriers there can be no question but that both would be included.

"When applied to interstate operations, whether the provisions would be held to apply for the protection of both passengers and general public would depend upon whether or not the state had authority to require such a liability bond for the protection of both classes of persons since section 6394 in effect requires such a construction of section 6391 as would satisfy the provisions of the constitution of the United States relative to interstate commerce, that is to say, if, under the constitutional provisions relating to interstate commerce, a state will not have authority to require a bond of an interstate carrier for the protection of its passengers, the department of public works would not have authority to require of such interstate carriers such a liability insurance. * * * "

Defendants, in an attempt to distinguish the present case from the ruling in Michigan Public Utilities Commission v. Duke, 266 U. S. 570–577, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105, upon the ground that that was a case where a private and not a common carrier was complaining, say: "There is, however, a wide distinction between a private carrier and one engaged in common carrier service, and counsel does not believe that this case is authority in a question as to whether such an indemnity bond could be required of common carriers engaged in interstate business. So far as counsel have been able to find, the decision denying the right of the state to require liability insurance for passengers and goods transported has been passed upon the ground that such requirement places a direct burden upon interstate commerce without giving further consideration to the matter. The mere fact that it does place a burden upon interstate commerce does not of itself condemn the requirement. If such a requirement is a reasonable one for the protection of the public, then the fact that it places some burden upon interstate commerce should not render it void. The result is that when this requirement is made of common carriers, as distinguished from private carriers, it is made for the benefit of the public just as much as though the provision for the protection of others than passengers is made for the benefit of the general public; in other words, a common carrier is one who is required to serve the public and a person does not cease to be the public or a citizen of the state merely by becoming a passenger in interstate stage. It would

seem, therefore, that in the absence of legislation by Congress governing this question the state would and should have a right to require such protection of its citizens, even though they have taken passage in an interstate carrier and that before such provision could be declared a burden on interstate it must be shown that it is unreasonable."

▆ Defendants contend further that: "No burden is cast or would be cast upon the plaintiffs by the requirement that they furnish liability insurance for the protection of their passengers if the furnishing of such insurance did not cost them anything or add to the cost of furnishing insurance for the protection of the public. For this reason, even though the requirement of the statute and the endorsement, which is provided by the department of public works for attachment to the policy of insurance, be construed to cover protection to passengers, still no burden has been imposed upon the plaintiffs in this case. * * * "

The presumption is warranted that companies engaged in the insurance business are not incurring the obligations incident to insuring the passengers of common carriers against injury gratuitously. It follows that evidence upon this point was unnecessary.

Neither in the briefs nor upon the oral argument was the case of Williams v. Denney, 151 Wash. 630, 276 P. 858, 859, cited.[1] The

[1] Plaintiffs cite: Red Ball Transit Co. v. Marshall et al. (D. C.) 8 F.(2d) 635; Clark v. Poor, 274 U. S. 554, 555, 47 S. Ct. 702, 71 L. Ed. 1199; Michigan Public Utilities Comm. v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105.

Defendants cite: Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Clark v. Poor, 274 U. S. 554, 556, 47 S. Ct. 702, 71 L. Ed. 1199; Cannonball Transportation Co. v. American Stages (D. C.) 53 F.(2d) 1051, 1053; Sections 6391, 6394, Rem. Comp. Stat. of Washington; Sprout v. South Bend, 277 U. S. 163, 166, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45; Louis v. Boynton (D. C.) 53 F.(2d) 471, 472; Continental Baking Co. v. Woodring (D. C.) 55 F.(2d) 347, 357; Stephenson v. Binford (D. C.) 53 F.(2d) 509; Michigan Public Utilities Commission v. Duke, 266 U. S. 570, 577, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596; Austin v. Tennessee, 179 U. S. 343, 349, 21 S. Ct. 132, 45 L. Ed. 224; Sage v. Baldwin (D. C.) 55 F.(2d) 968.

Additional cases cited by plaintiffs upon the oral argument were: Liberty Highway Co. v. Michigan Public Utilities Commission (D. C.) 294 F. 703–708; Hadfield v. Lundin, 98 Wash. 657, 168 P. 516, L. R. A. 1918B, 909, Ann. Cas.

court would have been saved time and labor had this been done, for in view of the decision in that case it is not necessary for this court to construe the sections of the Washington law with a view to determining whether the Legislature intended to require a bond for the protection of interstate passengers or not, nor to consider the effect upon the question presented of section 6394, supra, in the light of those decisions of which Smith v. Cahoon, 283 U. S. 553, 563 and 564, 51 S. Ct. 582, 75 L. Ed. 1264, is one of the latest.

In Williams v. Denney, supra, the Supreme Court of the State of Washington said:

"At the time of the arrest each of them had a sedan car carrying only a California motor vehicle license. Each of them was operating and purposed to continue to operate ordinary motor vehicles as a common carrier. After their arrest they employed counsel, who, with them, called upon appellant and stated to appellant that they desired to operate as auto transportation companies in exclusively interstate service between Seattle and California, but that they would not file any insurance policy or bond as required by the Auto Transportation Act. They were informed that a certificate would be issued as a matter of course upon filing application, paying filing fee of $25 each, and each filing insurance policy, but that no certificate would be issued until such insurance policies were filed. * * *

"The complaint alleges a willingness to comply with all of the provisions of the Auto Transportation Act, except the filing of an insurance policy or bond. * * *

"It was also shown by the pleadings and by uncontradicted affidavits that since the decision in Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286, the department of public works has issued certificates to interstate applicants as a matter of right upon complying with the other features of the Washington statutes. It is further shown that since the above decision the department has issued 62 interstate certificates, and the holders of all such certificates have filed the required liability insurance. * * *

"In Sprout v. City of South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833 [62 A. L. R. 45], the court held that a provision of a municipal ordinance requiring bus operators to obtain liability insurance from insurance companies authorized to do business in the state was reasonable within the Fourteenth Amendment to the Constitution, as applied to operators, and further held, respecting the commerce clause of the Constitution, that, in the absence of federal legislation covering the subject, nondiscriminatory regulations may be imposed, even on vehicles used exclusively in interstate commerce on highways, for the purpose of insuring the public safety and convenience; and a license may be exacted in an amount no larger than is reasonably required to defray expense of administering regulations, and that such power may be exercised by a city if authorized by appropriate legislation. It was there held that the charges under that city ordinance were unreasonable and could not be sustained as a police measure. It was, although not essential to a decision in that case, observed:

" 'Objection under the commerce clause is made also to the requirement of liability insurance. There being grave dangers incident to the operation of motor vehicles, a state may require users of such vehicles on the public highways to file contracts providing adequate insurance for the payment of judgments recovered for certain injuries, resulting from their operation. Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596. Compare Kane v. New Jersey, 242 U. S. 160, 167, 37 S. Ct. 30, 61 L. Ed. 222; Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091; Clark v. Poor, 274 U. S. 554, 557, 47 S. Ct. 702, 71 L. Ed. 1199. It may, consistently with the federal Constitution, delegate by appropriate legislation a part of this power to a municipality. Such provisions for insurance are not, even as applied to busses engaged exclusively in interstate commerce, an unreasonable burden on that commerce, if limited to damages suffered within the state by persons other than the passenger. Whether the insurance here prescribed is, because of its scope, obnoxious to the commerce clause, we need not inquire. Compare Barrett v. New York, 232 U. S. 14, 33, 34 S. Ct. 203, 58 L. Ed. 483; Michigan Public Utilities Commission v. Duke, 266 U. S. 570, 577, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105.'

"We call attention to the above case citations, and shall not recite or discuss them.

"Whether or not the above quotation constitutes dictum, apparently that court intimates the validity of legislation requiring

1918C, 942; Smith v. Cahoon, 283 U. S. 553, 564, 565, 51 S. Ct. 582, 75 L. Ed. 1264; United States v. L. Cohen Grocery Co., 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045; United States v. Ju Toy, 198 U. S. 253, 25 S. Ct. 644, 49 L. Ed. 1040; Spraigue v. Thompson, 118 U. S. 90, 6 S. Ct. 988, 30 L. Ed. 115.

users of motor vehicles engaged in interstate commerce to file contracts providing adequate insurance for the payment of judgments, if limited to damages suffered within the state by persons other than the passenger.

*"Why there should be such distinction, we are unable to perceive. Certainly those being carried through the state in interstate commerce by such common carriers as those in question are as greatly affected and as deeply concerned in the question, whether, if injured by their carrier, they may obtain financial relief, as are those suffering damages 'other than the passenger.'*

*"Interstate railway carriers have property within the state available for the recovery of damages, and such carriers have always been held liable for negligent injury within a state of interstate passengers as well as intrastate passengers if jurisdiction could be obtained of such carrier in such state.*

*"These interstate busses are often comparatively irresponsible financially, frequently incurring liabilities wholly incomparable to their available assets."*

(Italics this Court's.)

" 'Legal liability without financial responsibility is a barren right to one who sustains injury by the wrongful act of another.

" 'A peremptory requirement that, before one brings a dangerous instrumentality into public places, the owner must first provide adequate security that those who suffer personal injury through the negligent use thereof shall be assured of recompense would be no greater interference with fundamental rights than the instances just cited.' In re Opinion of the Justices, 251 Mass. 569, 147 N. E. 681.

"Upon the general question of the validity of this legislation, we know of no better reasoning or no more weighty authority, except the authority of the Supreme Court of the United States, upon this question, than that of the Supreme Judicial Court of Massachusetts, in a very well considered opinion cited above to the legislative body of Massachusetts. We quote with high approval what they said upon this question:

" 'Regulations of the kind prescribed by the proposed bill may apply to interstate commerce on the same terms as to domestic travelers. The states cannot enact laws for the specific end of regulating interstate commerce; but they may enact laws for the protection of the general public, against apprehended harm including that caused by those engaged in interstate commerce. The power

of the several states to "provide for the establishment, maintenance, and control of public highways, turnpike roads" and like conveniences and necessities has been recognized in numerous decisions of the United States Supreme Court. New Orleans Gas [-Light] Co. v. Louisiana Light [& Heat Producing & Mfg.] Co., 115 U. S. 650, 661, 6 S. Ct. 252, 29 L. Ed. 516; Fair Haven & Westville Railroad v. New Haven, 203 U. S. 379, 390, 27 S. Ct. 74, 51 L. Ed. 237. "Even interstate business must pay its way." Postal Telegraph-Cable Co. v. Richmond, 249 U. S. 252, 259, 39 S. Ct. 265, 266 (63 L. Ed. 590). That proposition is apt to describe the burden which a state may place upon interstate commerce, in common with all other business and pleasure using highways, for the protection of the life and safety of other travelers. There is a great field for the valid exercise of the police power by the several states for the common welfare although, incidentally but not primarily and mainly, interstate commerce may be affected and regulated. See Commonwealth v. People's Express Co., 201 Mass. 564, 578, 88 N. E. 420, 131 Am. St. Rep. 416, for a collection of cases. Commonwealth v. O'Neil, 233 Mass. 535, 124 N. E. 482; Western Union Telegraph Co. v. Commercial Mill Co., 218 U. S. 406, 31 S. Ct. 59, 54 L. Ed. 1088, 36 L. R. A. (N. S.) 220, 21 Ann. Cas. 815; Missouri Pacific Railway v. Larabee Flour Mills Co., 211 U. S. 612, 29 S. Ct. 214, 53 L. Ed. 352; Atlantic Coast Line Railroad v. Georgia, 234 U. S. 280, 34 S. Ct. 829, 58 L. Ed. 1312; Price v. Illinois, 238 U. S. 446, 35 S. Ct. 892, 59 L. Ed. 1400. That principle has been given direct application to state statutes touching the operation of motor vehicles upon the highways of a state both by nonresidents and by those engaged in interstate commerce. "In the absence of national legislation covering the subject a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles—those moving in interstate commerce as well as others." Hendrick v. Maryland, 235 U. S. 610, 622, 35 S. Ct. 140 (142), 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 168, 37 S. Ct. 30, 61 L. Ed. 222. * * *'

"The requirements of our statute are reasonable as regulations under the police power of the state, and not obstructive of, or undue burdens upon, interstate commerce. Northern Pacific R. Co. v. Schoenfeldt, supra [123 Wash. 579, 213 P. 26].

"Since Congress has not occupied the field

in question by controlling legislation, in which case the state would be excluded, we are of the opinion that our regulations in no way contravene the commerce clause of the federal Constitution."

As will be noted, the Supreme Court of the State of Washington quotes with approval the following from In re Opinion of the Justices, 251 Mass. 569, 147 N. E. 681, 698: "There is nothing inconsistent with the conclusion that the proposed statute would be valid in this respect in the recent decisions of Michigan Public Utilities Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445 [36 A. L. R. 1105], where compulsory interstate commerce as a common carrier was sought to be imposed upon one carrying on interstate commerce as a private person. * * * "

In Michigan Public Utilities Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105, the state law was held to violate both the commerce clause and the Fourteenth Amendment. It was held that the state law violated the Fourteenth Amendment in undertaking by legislative fiat to compel a private carrier to become a common carrier. The court, however, held that it further violated the commerce clause in two respects, the first of which alone is noted in that part of the decision of the justices quoted. This is shown by the following part of the opinion in Michigan Public Utilities Commission v. Duke, 266 U. S. 570, at page 577, 45 S. Ct. 191, 193, 69 L. Ed. 445, 36 A. L. R. 1105: "And it is a burden upon interstate commerce to impose on plaintiff the onerous duties and strict liability of common carrier, *and the obligation of furnishing such indemnity bond to cover the automobile bodies hauled under his contracts as conditions precedent to his right to continue to carry them in interstate commerce."* (Italics this Court's.)

█ Commerce is interstate or intrastate by virtue of the relation of the carriage to the state or states and not because of the status of the carrier as common or private.

In Re Opinion of the Justices, 251 Mass. 569, 147 N. E. 681–698 (18 and 19), it is not stated that a statute providing for liability insurance on account of passengers or property carried in interstate commerce would be valid. That such is the fact has already been recognized. The District Court, S. D. Ohio E. D., in Clark et al. v. Poor et al., 20 F. (2d) 182, in holding that an interstate carrier which is not ready to comply with the valid conditions of the Ohio Transportation Act is not entitled to enjoin enforcement, said: "Upon plaintiffs' admission that they are common carriers for hire between fixed termini and otherwise, within the definition of the Motor Transportation Act, it is plain that they are obliged to comply with all the provisions of this law, not unconstitutional, as applied to them. If defendants have been and are willing to grant the certificate, and are not seeking to enforce any system of uniform accounting against the plaintiffs, and if there are no specific police regulations in the law or orders of the commission complained of, then plaintiffs are without equity, except in so far as the conditions annexed to defendants' offer may be unconstitutional. In Red Ball Transit Co. v. Marshall et al. (D. C.) 8 F.(2d) 635, this day decided, we have held that the tax imposed is not invalid as applied to a motor transportation company engaged in interstate commerce. It is also therein held, on authority of Liberty Highway Co. v. Michigan Public Utilities Commission (D. C.) 294 F. 703, and Michigan Public Utilities Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105, that the liability and cargo insurance requirements are unreasonable and invalid. See our opinion for further discussion. *It must be understood that this holding is limited to the specific facts before the court, in our opinion and in the several cases cited, and is not to be taken as holding invalid liability and freight insurance in different situations, such, for instance, as were approved in Re Opinion of Justices, 251 Mass. 569, 147 N. E. 681."* (Italics this Court's.)

In the case of Sprout v. City of South Bend, 277 U. S. 163, at page 172, 48 S. Ct. 502, 505, 72 L. Ed. 833, 62 A. L. R. 45, the Supreme Court said: "Such provisions for insurance are not, even as applied to busses engaged exclusively in interstate commerce, an unreasonable burden on that commerce, if limited to damages suffered within the state by persons other than the passenger. Whether the insurance here prescribed is, because of its scope, obnoxious to the commerce clause, we need not inquire."

In the last of the foregoing sentences it would appear that the court did not consider it necessary to determine the "scope" of the state statutory requirement as to insurance, that is, whether it was *intended* to require insurance for interstate traffic or not. The implication, it would appear, is that if the statute in its scope included interstate commerce it was invalid.

Whether or not it was intended by the Su-

preme Court in the case of Sprout v. City of South Bend, supra, to hold that a state statute, requiring a common carrier in interstate commerce to provide insurance for the safety of interstate passengers, was obnoxious to the commerce clause, it is not necessary to here determine, for the Supreme Court in its opinion at any rate recognizes such rule for it refers, evidently with approval, to Adams Express Co. v. New York, 232 U. S. 14, 33, 34 S. Ct. 203, 58 L. Ed. 483, and Michigan Public Utilities Commission v. Duke, 266 U. S. 570, 577, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105.

In the case cited, Adams Express Co. v. New York, 232 U. S. 14, 33, 34 S. Ct. 203, 208, 58 L. Ed. 483, sections 305 and 306 of the ordinance of the city required the licensing of expressmen and the express business. Section 332 of the ordinance required the giving of a license bond by the owner of a public express for each vehicle licensed conditioned for the safe and prompt delivery of all baggage, packages, parcels, and other articles or things entrusted to the owner or driver of any such licensed express.

The Supreme Court not only held sections 305 and 306 invalid but also section 332 requiring the bond, the court saying: "Similar considerations are controlling with respect to the provision of § 332 for the giving of license bonds. This in terms is related to the requirement of § 305. It is provided that a bond shall be given 'for each and every vehicle licensed,' and it is to be conditioned 'for the safe and prompt delivery of all baggage, packages,' etc., intrusted to the owner or driver 'of any such licensed express.' As applied to the company's business of interstate transportation, it must fall with the provision regarding the license, *and, further*, it must be regarded as repugnant to the exclusive control asserted by Congress in occupying the field of regulation with regard to the obligations to be assumed by interstate express carriers." (Italics this Court's.)

It will be noted that the court did not limit its holding that the section was invalid solely because under the terms of the Act of June 29, 1906, chap. 3591, 34 Stat. 584, Congress had legislated concerning express companies, but also held it invalid because of its interference with interstate commerce. This is made clear by that part of the opinion relating to sections 305 and 306, to which section 332 was, as stated, "related," as is the bond requirement of section 6391 of the Washington law to section 6390, providing for the certificate of public convenience and necessity. In that part of its opinion the Supreme Court said: "In restraining the enforcement of §§ 305 and 306, as stated, we think that the court was right. In the absence of a controlling state decision construing the group of ordinances in question and the statute authorizing the city to license businesses (Greater New York charter, § 51), we are not satisfied that they were designed, despite the broad definition contained in § 330, to apply to interstate business. The practical construction which they received before the present controversy arose is very persuasive to the contrary (City of New York v. New York City Ry. Co., 193 N. Y. 543, 549, 86 N. E. 565; United States v. Cerecedo Hermanos, 209 U. S. 337, 338, 339, 28 S. Ct. 532, 52 L. Ed. 821, 822). But, if the above-mentioned sections are to be deemed to require that a license must be obtained as a condition precedent to conducting the interstate business of an express company, we are of the opinion that, so construed, they would be clearly unconstitutional. It is insisted that, under the authority of the state, the ordinances were adopted in the exercise of the police power. But that does not justify the imposition of a direct burden upon interstate commerce. Undoubtedly, the exertion of the power essential to assure needed protection to the community may extend incidentally to the operations of a carrier in its interstate business, provided it does not subject that business to unreasonable demands and is not opposed to Federal legislation. Smith v. Alabama, 124 U. S. 465, 8 S. Ct. 564, 31 L. Ed. 508; Hennington v. Georgia, 163 U. S. 299, 16 S. Ct. 1086, 41 L. Ed. 166; N. Y., N. H. & H. R. R. Co. v. New York, 165 U. S. 628, 17 S. Ct. 418, 41 L. Ed. 853; Lake Shore & M. S. Ry. Co. v. Ohio, 173 U. S. 285, 19 S. Ct. 465, 43 L. Ed. 702. It must, however, be confined to matters which are appropriately of local concern. It must proceed upon the recognition of the right secured by the Federal Constitution. Local police regulations cannot go so far as to deny the right to engage in interstate commerce, or to treat it as a local privilege, and prohibit its exercise in the absence of a local license. Crutcher v. Kentucky, 141 U. S. 47, 58, 11 S. Ct. 851, 35 L. Ed. 649, 652; Robbins v. Shelby County Taxing District, 120 U. S. 489, 496, 7 S. Ct. 592, 30 L. Ed. 694, 697; Leloup v. Mobile, 127 U. S. 640, 645, 8 S. Ct. 1380, 32 L. Ed. 311, 313; Stoutenburgh v. Hennick, 129 U. S. 141, 148, 9 S. Ct. 256, 32 L. Ed. 637, 639; Rearick v. Pennsylvania, 203 U. S. 507, 27 S. Ct. 159, 51 L. Ed. 295; International Text-Book Co. v. Pigg, 217 U. S. 91, 109, 30 S. Ct. 481, 54 L.

Ed. 678, 686, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103; Oklahoma v. Kansas Natural Gas Co., 221 U. S. 229, 260, 31 S. Ct. 564, 55 L. Ed. 716, 728, 35 L. R. A. (N. S.) 1193; Buck Stove Co. v. Vickers, 226 U. S. 205, 215, 33 S. Ct. 41, 57 L. Ed. 189, 192; Crenshaw v. Arkansas, 227 U. S. 389, 33 S. Ct. 294, 57 L. Ed. 565; Minnesota Rate Cases (Simpson v. Shepard), 230 U. S. 352, 401, 33 S. Ct. 729, 57 L. Ed. 1511, 1542 [48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18]. As was said by this court in Crutcher v. Kentucky, supra [141 U. S. page 58, 11 S. Ct. 851, 35 L. Ed. 649], 'a state law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it.'"

While Crutcher v. Kentucky, supra, was decided in 1891, concerning transactions in 1888, subsequent to the enactment of the first Interstate Commerce Act of 1887, all of the cases cited in Crutcher v. Kentucky, supporting the announced rule that: "A state law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it." That is, Pickard v. Pullman Southern Car Co., 117 U. S. 34, 6 S. Ct. 635, 29 L. Ed. 785; Robbins v. Shelby County Taxing District, 120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694; Leloup v. Mobile, 127 U. S. 640, 8 S. Ct. 1380, 32 L. Ed. 311; Asher v. Texas, 128 U. S. 129, 9 S. Ct. 1, 32 L. Ed. 368; Stoutenburgh v. Hennick, 129 U. S. 141, 9 S. Ct. 256, 32 L. Ed. 637; McCall v. California, 136 U. S. 104, 10 S. Ct. 881, 34 L. Ed. 392; Norfolk & Western Railroad Co. v. Pennsylvania, 136 U. S. 114, 10 S. Ct. 958. 34 L. Ed. 394, were all decided before the first of the Interstate Commerce acts.

■ The Interstate Commerce Act (title 49, USCA § 1), by reason of which the ruling in the case of Adams Express Co. v. New York, 232 U. S. 14, 34 S. Ct. 203, 58 L. Ed. 483, was, in part, made, does not apply to interstate commerce carried by motor vehicles, as that expression is ordinarily understood.

In so far as the court is advised, Congress has gone no further in regulating interstate commerce by motor vehicles than the National Motor Vehicle Theft Act (Dyer Act), chap. 89, 41 Stat. 324 (title 18, USCA, § 408) and those acts which may be generally described as the Federal Highway Act (title 23, USCA, §§ 1 to 25).

In Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 326, 69 L. Ed. 623, 38 A. L. R. 286, the court had occasion to consider the effect of the Federal Highway Act of November 9, 1921 (42 Stat. 212, title 23, USCA, §§ 1–25), upon the validity of section 6390, Remington's Compiled Statutes, supra, requiring common carriers in interstate commerce to obtain from the director of public works a certificate of public convenience and necessity, touching which matter the court said:

"The argument is not sound. It may be assumed that section 4 of the state statute is consistent with the Fourteenth Amendment; and also, that appropriate state regulations adopted primarily to promote safety upon the highways and conservation in their use are not obnoxious to the commerce clause, where the indirect burden imposed upon interstate commerce is not unreasonable. Compare Michigan Public Utilities Commission v. Duke, No. 283, 266 U. S. 570, 571, 45 S. Ct. 191, 69 L. Ed. 445 [36 A. L. R. 1105]. The provision here in question is of a different character. Its primary purpose is not regulation with a view to safety or to conservation of the highways, but the prohibition of competition. It determines, not the manner of use, but the persons by whom the highways may be used. * * *

"Thus, the provision of the Washington statute is a regulation, not of the use of its own highways, but of interstate commerce. Its effect upon such commerce is not merely to burden, but to obstruct, it. Such state action is forbidden by the commerce clause. It also defeats the purpose of Congress, expressed in the legislation giving federal aid for the construction of interstate highways."

■ While the court should follow the construction of the statute adopted by the Supreme Court of the state in Williams v. Denney, supra, it must decide for itself as to the question of the validity of the statute so construed. Section 6391, requiring the owners of any "auto transportation company" (which expression includes persons as well as corporations, section 6387 (d) transporting persons for compensation, to procure liability damage insurance for all persons (which the Supreme Court of the State of Washington in Williams v. Denney, supra, has held to include passengers carried by it) receiving personal injuries by reason of negligence, is, as so construed, invalid as it imposes a burden upon and interferes with interstate commerce. Michigan Public Utilities Commission v. Duke, 266 U. S. 570–577, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105; Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Sprout v. City of South

Bend, 277 U. S. 163, 172, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45; Liberty Highway Co. v. Michigan Public Utilities Commission (D. C.) 294 F. 703–708 (8); Red Ball Transit Co. v. Marshall (D. C.) 8 F.(2d) 635–638 (7, 8, 9); Louis v. Boynton (D. C.) 53 F. (2d) 471, 473 (6); Continental Baking Co. v. Woodring (D. C.) 55 F.(2d) 347–357 (31–33); Sage v. Baldwin (D. C.) 55 F.(2d) 968, 969, 970 (3, 4), 971 (9); Johnson Transfer & Freight Lines v. Perry (D. C.) 47 F.(2d) 900–902 (8, 9). See, also, Spraigue v. Thompson, 118 U. S. 90, 6 S. Ct. 988, 30 L. Ed. 115. The ruling in Clark v. Poor, 274 U. S. 554, is to be distinguished from a case such as the present as shown by the facts recited at pages 557 and 558, 47 S. Ct. 702, 71 L. Ed. 1199.

The decree will enjoin defendants from requiring a bond as provided by the statute and as provided by the indorsement or regulation promulgated by the department or any bond unless it expressly excepts from liability injuries to passengers carried by plaintiffs in interstate commerce.

The findings of fact, conclusions of law, and decree will be settled upon notice.

The clerk will notify the attorneys for the parties of this ruling.